UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MAURO SERRANO, III, ON BEHALF OF | § | |
| HIMSELF AND ALL OTHERS | § | |
| SIMILARLY SITUATED, | § | |
| *Plaintiffs*, | § | |
| | § | |
| | § | |
| | § | CIVIL ACTION NO. _____ |
| | § | |
| vs. | § | |
| | § | |
| REPUBLIC SERVICES, INC. AND BFI | § | JURY TRIAL DEMANDED |
| WASTE SERVICES OF TEXAS, LP, | § | |
| D/B/A REPUBLIC SERVICES OF | § | |
| CORPUS CHRISTI AND D/B/A ALLIED | § | |
| WASTE SERVICES OF CORPUS | § | |
| CHRISTI, | § | |
| *Defendants.* | § | |

## PLAINTIFF'S ORIGINAL COLLECTIVE ACTION COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff Mauro Serrano, III, files this Original Collective Action Complaint on Behalf of Himself and All Others Similarly Situated, against Defendant Republic Services, Inc. and Defendant BFI Waste Services of Texas, LP, d/b/a Republic Services of Corpus Christi and d/b/a Allied Waste Services of Corpus Christi, to recover compensation, liquidated damages, attorneys' fees, and costs, pursuant to the Fair Labor Standards Act of 1938, as amended (hereinafter "FLSA"). In support of this action, Plaintiff and All Others Similarly Situated would respectfully show:

## SUMMARY

1. Plaintiff Mauro Serrano, III ("Plaintiff") was employed as a nonexempt waste disposal driver at Defendants' Corpus Christi waste disposal facility for over six years. Plaintiff brings

this action on behalf of himself and on behalf of all other similarly situated nonexempt waste disposal drivers employed by Defendant Republic Services, Inc. and Defendant BFI Waste Services of Texas, LP throughout the State of Texas ("Class Members") during the preceding three years.

2.    The FLSA is designed to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers." 29 U.S.C. § 202(a).  To achieve its purposes, the FLSA requires three things.  First, the FLSA requires payment of minimum wages. 29 U.S.C. § 206(a). Second, the FLSA requires overtime pay for covered employers whose employees work in excess of 40 hours per workweek.   29 U.S.C. 207(a).   Third, the FLSA establishes minimum recordkeeping requirements for covered employers. 29 U.S.C. § 211(a); 29 U.S.C § 516.2(a)(7).

3.    Plaintiff and Class Members contend that Defendants failed to pay overtime in accordance with the FLSA for at least the three year period preceding the filing of this action. Defendants' violations are described as follows.

4.    Defendants violated and continue to violate the FLSA by failing to pay their waste disposal drivers, including Plaintiff and Class Members, time and one-half for each hour worked in excess of 40 hours per workweek.

5.    Defendants violated and continue to violate the FLSA by permitting and encouraging waste disposal drivers, including Plaintiff and Class Members, to perform pre trip and post trip work duties off the clock.

6.    Defendants violated and continue to violate the FLSA by deducting 30-minute meal periods from Plaintiff's and Class Members' daily hours worked, despite knowing that Plaintiff and Class Members, routinely worked throughout the designated 30-minute meal period.

## PARTIES AND PERSONAL JURISDICTION

7.      Plaintiff is an individual residing in Corpus Christi, Nueces County, Texas.  Plaintiff's written consent form to this action is attached hereto as Exhibit "A".

8.      The Class Members are all of Defendants' non-exempt current and former waste disposal drivers in the State of Texas who performed the same or similar work as Plaintiff and were subjected to the same or similar payment policies as Plaintiff during the past three years.

9.      Defendant Republic Services, Inc. ("Republic") is a for-profit corporation incorporated in the State of Delaware. Republic's principal place of business is in Phoenix, Arizona.  Republic is registered with the Texas Secretary of State's office to do business in the State of Texas. Republic is a covered employer under the FLSA and acted as such in relation to Plaintiff and Class Members.  Republic may be served with process by serving its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

10.     Defendant BFI Waste Services of Texas, LP ("BFI") is a foreign, for-profit corporation doing business in the State of Texas. Republic is the ultimate parent company of BFI. BFI is a covered employer under the FLSA and acted as such in relation to Plaintiff and Class Members. BFI may be served with process by serving its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

11.     Upon information and belief, BFI is a wholly owned subsidiary or affiliate of Republic.

12.     This Court has personal jurisdiction over Defendants because Defendants purposefully avail themselves of the privileges and benefits of conducting business in the State of Texas and have established minimum contacts sufficient to confer jurisdiction over the Defendants.  The assumption of jurisdiction over Defendants will not offend traditional notions of fair play and substantial justice. The assumption of jurisdiction over Defendants is consistent with the

constitutional requirements of due process.

13.     Defendants have had and continue to have continuous and systematic contacts with the State of Texas sufficient to establish general jurisdiction over Defendants. Specifically, Defendants have conducted and/or continue to conduct business in the State of Texas by collecting and disposing of commercial, industrial and residential waste, employing workers, and contracting with Texas residents.

14.     The claims and causes of action asserted in this complaint arise out of or relate to Defendants' contacts with Texas residents, thereby conferring specific jurisdiction over Defendants.

## SUBJECT MATTER JURISDICTION AND VENUE

15.     This Court has jurisdiction over the subject matter of this action under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

16.     Venue is proper in the Southern District of Texas because all or a substantial part of the acts, omissions and events giving rise to this action occurred in the Southern District of Texas.

## FLSA COVERAGE

17.     At all material times, Defendants have been employers within the meaning of section 203(d) of the FLSA, which is defined to include any person acting directly or indirectly in the interest of an employer in relation to an employee. 29 U.S.C. § 203(d).

18.     At all material times, each Defendant has been an enterprise in commerce or in the production of goods for commerce within the meaning of section 203(s)(l) of the FLSA because Defendants have had and continue to have employees engaged in commerce. 29 U.S.C. § 203(s)(1).

19.     At all material times, Plaintiff and Class Members were employees who engaged in

commerce or in the production of goods for commerce as required by sections 206 and 207 of the FLSA. 29 U.S.C. §§ 206-207.

20. At all material times, Defendants have had, and continue to have, an annual gross business volume in excess of the statutory standard of $500,000.

## STATEMENT OF FACTS

### a. Defendants' Corporate Relationship

21. Defendants provide waste collection and disposal services to their customers throughout the State of Texas.

22. As it relates to certain allegations advanced in this complaint, an overview of Defendants' corporate history and structure is in order.

23. Browning-Ferris Industries, Inc., commonly known to the world as BFI, has operated waste disposal facilities throughout Texas for many years, including the facility in Corpus Christi where Plaintiff worked.

24. In 1999, Allied Waste Services, Inc. ("Allied Waste") acquired BFI's Texas based waste disposal operations. Allied Waste's acquisition included BFI's Corpus Christi facility and other waste disposal facilities throughout Texas. Following Allied Waste's acquisition of BFI's Texas based facilities, the Corpus Christi facility continued operating under both names, Allied Waste and BFI.

25. In 2008, Republic acquired Allied Waste/BFI's Texas based operations. Republic's acquisition included the Corpus Christi facility and other waste disposal facilities throughout Texas during approximately the same time period. Between 2008 and 2010, following Republic's acquisition of Allied Waste/BFI, Republic continued operating the Corpus Christi based facility under the names Allied Waste and BFI.

26.     Today, Republic conducts its Texas based waste disposal operation jointly and in cooperation with Defendant BFI Waste Disposal Services of Texas, LP.  Each of Defendants' Texas facilities operates under an assumed name.  Defendants' Corpus Christi facility, for example, operates under the assumed names Republic Services of Corpus Christi and Allied Waste Services of Corpus Christi.  Both Republic and BFI Waste Disposal Services of Texas, LP are involved in the day-to-day management and operation of their Texas based waste disposal facilities.

27.     Defendants hold themselves out to the general public as one company, Republic Services, Inc., operating in various regions and locations throughout Texas. Upon information and belief, they share employees, have a common management, pool resources, are affiliated and operate out of the same headquarters.  Defendants advertise through one website, provide the same type of service to their customers, and share a common business model. Part of the common business model is the overtime wage violation made the basis of this complaint. These facts represent a classic example of "corporate fragmentation."

28.     Plaintiff's and Class Members' paystubs confirm that Defendants pay their Texas employees using operating accounts held in the names of both Republic and BFI.  *See* Employee Paystubs attached as Exhibits "B" and "C".[1]

29.     Since their inception, Defendants have had a joint employment relationship with respect to Plaintiff and Class Members.  Defendants have an interrelation of operations between the two companies, centralized control of labor relations, common control over business operations, and a common business purpose to provide their customers with commercial, industrial and residential waste collection services.

_____

[1] Identifying information has been redacted from Exhibits "B" and "C" to protect this former employee who will be filing a consent form with Plaintiff's forthcoming Motion to Conditionally Certify.

30.     Defendants provided (or, at present, provide) training to Plaintiff and Class Members, controlled (or control) the hours to be worked by Plaintiff and Class Members, and directed (or direct) the work of Plaintiff and Class Members. Defendants maintained (or maintain) communication with Plaintiff and Class Members and received (or receive) updates as to the status of their work, and controlled (or control) the work of Plaintiff and Class Members.

31.     Upon information and belief, personnel from Republic's home office in Arizona conduct weekly management meetings by telephone with local managers of Defendants' Texas facilities, including Republic's Corpus Christi facility.

32.     Upon information and belief, personnel from Republic's home office in Arizona make periodic visits to Defendants' Texas facilities to audit each facility's performance and profitability.

33.     Defendants operate as a "single enterprise" and are each liable for the FLSA violations of the other.

34.     Because Defendants' operations were unified, and Defendants' shared (or share) control over the work of Plaintiff and Class Members, Defendants are each directly liable for the violations complained of in this case.

**b.     Plaintiff and Class Members are (were) Waste Disposal Drivers for Defendants**

35.     Defendants have residential, commercial, and industrial divisions that employ waste disposal drivers (the industrial division is also known as the "roll off" division).

36.     Defendants' waste disposal drivers all collect, transport and dispose of waste.

37.     Defendants' waste disposal drivers are all nonexempt employees under the FLSA.

38.     Plaintiff was a nonexempt waste disposal driver for Defendants.

39.     Class Members are (or were) nonexempt waste disposal drivers for Defendants for the 3 years period preceding the filing of this complaint.

40.     None of the FLSA exemptions relieving a covered employer of the statutory duty to pay employees overtime at one and one-half times the regular rate of pay apply to Defendants, Plaintiff or Class Members.

41.     Plaintiff and Class Members are similarly situated with respect to their job duties, their pay structure and, as set forth below, the policies of Defendants resulting in FLSA violations.

**c.      Defendants did not (and do not) pay Plaintiff and Class Members overtime in accordance with the FLSA.**

42.     Defendants paid (or pay) Plaintiff and Class Members a job rate or day rate, plus other forms of compensation for services.

43.     Plaintiff and Class Members were (and are) required to work overtime hours when requested by Defendants, and were (and are) subject to potential disciplinary action for refusing to work overtime.  *See* Defendants Employee Handbook, p. 43, attached as Exhibit "D".

44.     Plaintiff and Class Members regularly worked (or work) over forty (40) hours in a workweek as waste disposal drivers.

45.     In calculating Plaintiff's and Class Members' overtime pay rate, Defendants calculated Plaintiff's and Class Members' regular rate of pay by dividing the total amount of compensation by the total hours worked in a workweek.

46.     Defendants' calculation of Plaintiff's and Class Members' regular rate of pay does not comply with the FLSA.

47.     Defendants paid (or pay) Plaintiff and Class Members one-half of the regular rate for each hour worked over 40 hours in a workweek.

48. Defendants did not pay (or do not pay) Plaintiff or Class Members time and one-half for hours worked over 40 hours in a workweek.

49. The FLSA requires non-exempt employees to be compensated for overtime work at the mandated overtime rate.

50. Plaintiff or Class Members were (and are) entitled to receive time and one-half compensation for all hours worked over 40 hours in a workweek.

51. The payment scheme used by Defendants to pay Plaintiff and Class Members did not (and does not) comply with the FLSA.

52. Defendants violated and continue to violate the FLSA by failing to pay their waste disposal drivers, including Plaintiff and Class Members, time and one-half for each hour worked in excess of forty (40) hours per work week.

53. As Defendants' employees, Plaintiff and Class Members were subjected to (or are subject to) the same or substantially similar payment scheme, as described above. *See* Pay Sheets attached as Exhibits "E", "F", "G" and "H".[2]

**d.    Defendants did not (and do not) compensate Plaintiff and Class Members for overtime hours worked off the clock.**

54. As part of their job responsibilities, Plaintiff and Class members have pre and post trip responsibilities that they are required to perform at the beginning and end of each work shift. *See* Defendants' Safe Actions for Excellence Handbook, pp. 28-30, attached as Exhibit "I".

---

[2] Exhibit "E" is Plaintiff's roll-off pay sheet from Corpus Christi, Texas. Exhibit "F" is a commercial waste disposal driver's pay sheet from Austin, Texas. Identifying information has been redacted to protect this current employee who has provided information and expressed a willingness and desire to opt in should an opportunity arise. Exhibit "G" is a residential waste disposal driver's pay sheet from Austin, Texas. Identifying information has been redacted to protect this current employee who has provided information and has expressed a willingness and desire to opt in should an opportunity arise. Exhibit "H" is a commercial waste disposal driver's pay sheet from Corpus Christi, Texas. Identifying information has been redacted to protect this former employee who will be filing a consent form with Plaintiff's forthcoming Motion to Conditionally Certify.

55.     Plaintiff's and Class Members' pre and post trip responsibilities are integral and indispensable to their core job duties.

56.     Plaintiff's and Class Members' pre and post trip responsibilities are not de minimis in nature.

57.     Plaintiff and Class Members performed (and continue to perform) their pre and post trip responsibilities off the clock.

58.     Defendants knew and at times encouraged Plaintiff and Class Members to perform their pre and post trip responsibilities off the clock in violation of the FLSA.

59.     Defendants did not (and do not) compensate Plaintiff and Class Members for performing their pre and post trip responsibilities off the clock.

60.     As a result of Defendants' failure to compensate Plaintiff and Class Members for performing their pre and post trip responsibilities off the clock, Plaintiff and Class Members worked overtime hours for which they were not compensated.

61.     Defendants' failure to compensate Plaintiff and Class Members for off-the-clock overtime hours violated (and violates) the FLSA.

62.     Plaintiff and Class Members were subjected to (or are subject to) the same or substantially similar policy, practice or scheme that required them to perform their pre and post trip responsibilities off the clock, as described above.

**e.     Deduction of Meal Periods**

63.     Defendants have a policy that requires their employees, including Plaintiff and Class Members, to take a 30-minute meal period each and every workday.  *See* Defendants' Employee Handbook, pp. 44-45 attached as Exhibit "J".

64.    Defendants were aware that Plaintiff and Class Members regularly worked through their 30-minute meal periods.

65.    When calculating Plaintiff's and Class Members' hours each pay period, Defendants deducted 30 minutes from Plaintiff's and Class Members' daily on-the-clock hours.  In other words, for each 5 day workweek, Defendants deducted 2.5 hours from each workweek's total on-the-clock hours.  For a 6 day workweek, Defendants deducted 3 hours from each workweek total on-the-clock hours.

66.    Defendants were aware that Plaintiff and Class members regularly worked through the required 30-minute meal period.

67.    Defendants systematic deduction of the 30-minute meal period from Plaintiff's and Class Members' on-the-clock time resulted in Plaintiff and Class Members working overtime hours for which they were not compensated.

68.    Defendants' systematic deduction of the 30-minute meal period from hours worked in excess of 40 hours per workweek deprived Plaintiff and Class Members of overtime pay in violation of the FLSA.

69.    Plaintiff and Class Members were subjected to (or are subject to) the same or substantially similar policy, practice or scheme of having the 30-minute meal period deducted from their on-the-clock time, as described above.

<u>**CAUSE OF ACTION**</u>

70.    Plaintiff and Class Members incorporate by referenced all paragraphs and allegations set forth in the statement of facts of the complaint as though fully and completely set forth herein.

71.    Defendants have not maintained accurate compensatory time records for Plaintiff and Class Members as required by the FLSA. 29 U.S.C. § 211(a); 29 U.S.C § 516.2(a)(7). This

practice regularly resulted in miscalculation of Plaintiff's and Class Members' 40 hour workweek. In other words, Plaintiffs and Class members routinely worked 40 hours before Defendants' time records would show that Plaintiff and Class Members had worked 40 hours in a given workweek. Consequently, hours worked by Plaintiff and Class members were often counted as straight time hours (under 40 hours), when they should have been counted as overtime hours.

72.     Defendants have violated and continue to violate the FLSA by failing to maintain accurate compensatory time records for Plaintiff and Class Members.

73.     Defendants have violated and continue to violate the FLSA by denying Plaintiff and Class Members correct overtime pay for hours worked over 40 hours per workweek.

74.     Defendants have violated and continue to violate the FLSA by denying Plaintiff and Class Members correct overtime pay for performing their pre and post trip responsibilities during hours worked over 40 hours per workweek.

75.     Defendants have violated and continue to violate the FLSA by denying Plaintiff and Class Members correct overtime pay by deducting 30-minute meal breaks from their on-the-clock time regardless of whether Plaintiff and Class Members worked through the meal period.

76.     Defendants paid Plaintiff and Class Members pursuant to a method that does not comply with the FLSA.

77.     Accordingly, Plaintiff and Class Members bring this cause of action under section 216(b) of the FLSA, which allows them to recover all unpaid overtime compensation to which they are entitled, but have not been paid for the 3 year period preceding the filing of this complaint. 29 U.S.C. § 216(b).

78.     As set forth below, Plaintiff and Class Members contend that Defendant's conduct in

violating the FLSA is willful. Accordingly, Plaintiff and Class Members seek recovery of all unpaid overtime compensation to which they are entitled by have not been paid for the third year preceding the filing of this complaint (in other words, 3 years total). 29 U.S.C. § 216(b). Due to the willful nature of Defendants' conduct, Plaintiff and Class Members seek to recover, as liquidated damages, an amount equal to unpaid overtime wages for the 3 year period for which unpaid overtime damages are sought. 29 U.S.C. § 216(b).

## **DEFENDANTS' CONDUCT IS WILLFUL**

79.     Defendants have willfully disregarded and continue to willfully disregard the provisions of the FLSA requiring them to pay Plaintiff and Class Members time and one and one-half overtime pay for all hours worked over 40 hours per workweek. Defendants knew or should have known that they were required to pay time and one-half overtime for all hours over 40 hours per workweek, and that their failure to do so would cause, and did cause, financial injury to Plaintiff and Class Members.  Defendants' actions constitute willful violations under the FLSA and were not made in good faith.

80.     In support of their allegation(s) that Defendants have acted willfully with respect the FLSA violations complained of herein, Plaintiffs and Class Members would show the following.

81.     Prior to Republic's acquisition of Allied Waste, waste disposal drivers, including Plaintiff and Class Members, were paid time and one-half overtime for all hours worked over 40 hours in a workweek.  *See* 2009 Allied Waste Pay Stub attached as Exhibits "K".[3]

82.     In January, 2010, Republic assumed complete control over of the day-to-day operations of the Corpus Christi facility. At that time, Plaintiff's and Class Members stopped receiving time and one-half overtime for all hours worked over 40 hours in a workweek.

---

[3] Identifying information has been redacted from Exhibit "K" to protect this former employee who will be filing a consent form with Plaintiff's forthcoming Motion to Conditionally Certify.

83. Since January, 2010, Plaintiff's and Class Members have been paid as previously described above in this complaint.

84. The scheme under which Plaintiff and Class Members were compensated was the same or substantially similar both before and after they stopped receiving time and-one half overtime pay. In other words, the pay scheme did not change in such a way as to relieve Defendants from having to pay Plaintiff and Class Members time and one-half overtime under the FLSA. Defendants just stopped paying time and one-half overtime.

85. Republic's policy was (and is) for its drivers not to clock more than 60 hours in any given workweek. At all times material, Plaintiffs and Class members were consistently instructed by management to make as many runs as they could but to "watch" (minimize) their hours. The policy behind the policy was (is) to maximize driver productivity while minimizing labor and infrastructure costs. Whatever purpose(s) it serves, this policy resulted in and continues to result in the FLSA violations complained of herein.

86. To better understand what Defendants and their managers knew or should have known, as it relates to Plaintiff's and Class Member's willfulness allegations, it is helpful to walk through Plaintiff's typical workday.

87. As a roll off driver, Plaintiff was not allowed to clock in until 5:00am each workday. Plaintiff's pre trip duties took approximately 30 minutes to complete before he was ready to drive out of the facility yard and start his waste disposal route for the day. Plaintiff's pre trip work included all activities listed on Exhibit "I". In order to "watch his hours" as directed by management, Plaintiff would arrive at the yard at 4:30am and complete his pre trip work before clocking in at 5:00am.

88. As did all drivers, Plaintiff would check in with Pete Garza, the driver services

coordinator, when he arrived at 4:30am. As the driver services coordinator, Garza was responsible for delivering to drivers, including Plaintiff, their vehicle condition report and, in some cases, vehicle keys. As the driver services coordinator, Garza was also responsible for keeping an independent time record of when Plaintiff began his workday. Plaintiff would ask Garza to write down his clock in time at the earliest clock in time allowed. In Plaintiff's case, this was 5:00am. Plaintiff then proceeded to complete his pre trip work before coming back and actually punching the time clock before leaving on his route at 5:00am. At the end of this process, there were 2 records showing the Plaintiff had clocked in, one the result of Plaintiff's conversation with Garza, and one the result of having actually punched to time clock. Garza knew, however, that Plaintiff had worked for approximately half an hour completing his pre trip work before the clock in times. Garza's workday typically started around 2:00am and ended sometime before Plaintiff's completed his route for the day. Once Plaintiff left the facility in the morning, he would not see Garza until the next morning. Garza, a former driver himself, knew exactly why drivers showed up 30 minutes before the allowed to clock in time.

89.    Plaintiff typically worked on average an 11 hour day. He picked up trash cans, hauled them to landfills and dumped them, all day long. He did not stop for lunch, and instead ate his lunch on the road or in line at a landfill while performing his duties as a waste disposal driver.

90.    At the end of the day, Plaintiff would return to the yard, immediately clock out, and then perform his post trip work.  Plaintiff's post trip work included all activities listed on Exhibit "I".

91.    If Plaintiff worked over 12 hours in any given workday, he was required to complete a driver's log sheet. At times when Plaintiff would have worked over 12 hours, the driver services coordinator for the afternoon shift (Maddie, Theresa or Catherine) would have the log sheet completed.  At other times, Plaintiff would complete the log sheet. If Plaintiff completed a log

sheet indicating drive time exceeding 11 hours for the day, the driver services coordinator would hand the log sheet back to Plaintiff with instructions to "correct" the drive time to below 11 hours. In response to Plaintiff's protest in such situations, the driver services coordinator's advised that this was how management wanted it done (regardless of its inaccuracy).

92.     Roll off manager Larry Kelly tracked Plaintiff's and other roll off drivers' hours on a daily basis. If it appeared that Plaintiff might exceed the 60-hour limit, Kelly would call Plaintiff on Plaintiff's personal mobile telephone and instruct Plaintiff not to worry about it, he (Kelly) would clock Plaintiff out, or have Hilda, the dispatcher, clock him out. Kelly either clocked Plaintiff out or instructed Hilda to clock him out in this manner, regardless of when Plaintiff finished his day and returned to the yard.

93.     During at least one roll off division meeting, Kelly acknowledged he was aware that drivers were performing pre and post trip work off the clock. Kelly did not tell the drivers to stop performing off the clock, but instead acknowledged he understood that they were just trying to save hours to protect against the 60-hour limit.

94.     Plaintiff and other roll off drivers were also required to attend Focus 6 safety meetings on the second Thursday of every month at 5:30am. Focus 6 meetings lasted approximately one hour. On Focus 6 meeting days, Plaintiff and other roll off drivers would arrive at the usual 4:30am time to do their pre trip work and then go to the meetings. Managers Larry Kelly and Dennis Chapa usually attended the Focus 6 meetings. Sometimes general manager Bob Bradley would attend the meetings. On Focus 6 meeting days, Plaintiff and other roll off drivers would not clock in until after the meeting was over, even though they had already completed their pre trip work and attended a mandatory safety meeting. Notably, Defendants recently started paying drivers for attending these meetings. But Defendants have not paid Plaintiff or his fellow roll off drivers for

the time they were required to spend attending the meetings in past years. In any event, Defendants' decision to start paying roll off drivers for attending required safety meetings demonstrates that Defendants knew that Plaintiff and his fellow roll off drivers should have been paid for their required attendance of these meetings.

95.    At some point after Republic began performance audits in 2010, safety supervisor Nick Barrera instructed Defendants' drivers when they would return to the yard at the end of the workday that they needed to show 30-minute meal periods as off-duty time, rather than on-the-clock time, if they were required to complete a log sheet.  In response, Plaintiff and other drivers explained that they did not take lunch breaks but instead ate their lunch while driving their trucks or while inching forward in line at the landfill waiting to dump their loads.  Managers Kelly and Chapa reinforced Barrera's instruction.  Kelly made it clear that 30 minutes would be deducted from each workday's hours, regardless of whether drivers actually took a lunch.  Like Barrera, Chapa instructed drivers to show 30-minute meal breaks on their log books as off duty time. Most notably, management also cautioned drivers to remember to add 2.5 hours back into the time clock's running total each week so that they were keeping track of their real drive time as they approached the 60 hour weekly time limit.  In essence, there were (are) two conflicting policies.  One policy was (is) "take lunch; we're not paying you for it."  The other policy was (is) "we know you're driving during the meal break, so pay attention to your time."  Either way (or both ways), Defendants knew what they were doing, knew that they were not keeping accurate records and knew that they were not paying overtime for all hours worked in excess of 40 hours per workweek in violation of the FLSA.

96.    Finally, on numerous occasions, Plaintiff and other roll off drivers complained to Chapa and Kelly that their overtime was not being calculated correctly and pleaded with them to correct

it. In response, Chapa and Kelly told Plaintiff and his fellow drivers to take their complaint to general manager Bob Bradley. At times, Chapa and Kelly would laugh when Plaintiff and his fellow drivers complained, and told them that if they were interested in making more money, they needed to complete more runs. Plaintiff and the other drivers were reluctant to complain to Bradley for fear of getting fired.

97.     Republic is one of the largest waste disposal and recycling companies in the United States. It is a publicly traded company. Republic is a sophisticated business with the knowledge and expertise to know that the payment scheme used to compensate their waste disposal drivers was and continues to be impermissible under the FLSA. BFI, as a wholly owned subsidiary of Republic, has access to Republic's resources and knowledge regarding an employer's duties and responsibilities toward its employees under the FLSA.

98.     Given the willful nature of Defendants' conduct, Plaintiff and Class Members request this Court permit recovery for any claims within the last three years, including liquidated damages, from the filing of this suit. 29 U.S.C. § 255(a).

**SIMILARITY OF PLAINTIFF AND CLASS MEMBERS**

99.     With regard to the FLSA violations asserted in this complaint, Plaintiff's experience is typical of all roll off drivers in Defendants' Corpus Christi facility.  Plaintiff has witnessed firsthand his fellow roll off drivers, as well as other drivers and Class Members, be subjected to the same treatment and violations.  Plaintiff and drivers in the other divisions of Defendants' Corpus Christi facility and drivers in Defendants' Austin area facility have shared their experiences with one another. As a result of these exchanges of information, Plaintiff possesses knowledge sufficient to demonstrate that Plaintiff and Class Members throughout the State of Texas are similarly situated in the following respects: (1) job duties, (2) pay structure, (3) denial

of proper overtime wages, (4) denial of compensation for overtime hours for work performed off the clock, and (5) deduction of wages for meal period time despite working through meal periods.

100.    Finally, a review of the pleadings, briefs and evidence filed by the parties is a similar FLSA case filed against Republic and BFI in the United States District Court for the Western District of Texas suggests that the Republic's failure to pay overtime in accordance with the FLSA is not isolated to one or two cities, but rather, is Republic's statewide practice. *See Rodriguez and Campos v. Republic Services, Inc. and BFI Waste Services of Texas, LP*, Civil Action No. 5:13-CV-00020[4].

### JURY DEMAND

101.    Plaintiff and Class Members hereby demand a jury trial.

### ATTORNEY FEES

102.    Plaintiff and Potential Class Members are entitled to recover their reasonable attorneys' fees, costs and expenses of this action as provided by the FLSA. 29 U.S.C. § 216(b).

### PRAYER

103.    For these reasons, Plaintiff and Potential Class Members respectfully pray that this Honorable Court enter all such orders that are necessary to accomplish the following:

a.      issuance of a court approved notice as soon as possible to all Class Members during any portion of the 3 years immediately preceding the filing of this action, informing them of

---

[4] The *Rodriguez* case was conditionally certified with a 90-day opt-in period of time and limited to residential drivers in and around San Antonio, Texas. Plaintiff did not receive notice to opt-in for the *Rodriguez* case. Further, the opt-in time period for the *Rodriguez* case has expired and any residential drivers in and around San Antonio who may not have elected to opt-in would still have the ability under the FLSA to pursue their own case(s) individually or through another opt-in notice related to this or any other case where notice may issue. Finally, Plaintiff and Class Members here are alleging additional FLSA violations, which were not part of the allegations made in the *Rodriguez* case.

their right to participate in the lawsuit if they should so desire;

b.      all such orders as are necessary, or may become necessary, to protect Plaintiff and Class Members from Defendants' retaliation for participating in this cause of action; and

c.      all such orders as are necessary, or may become necessary, requiring Defendants to correct their overtime pay and recordkeeping practices going forward.

104.    Plaintiff and Potential Class Members respectfully pray that the Court set this matter for trial and, upon final hearing, that the Court enter judgment in their favor, awarding the following:

a.      all amounts owed to Plaintiff and Class Members for unpaid overtime compensation for all hours worked over 40 hours in a workweek at the applicable time-and-a-half rate;

b.      trial and appellate attorneys' fees and expenses in accordance with the FLSA;

c.      prejudgment and post-judgment interest;

d.      costs of court; and

e.      all such other relief to which they may be entitled, whether it be at law, or in equity, general or special.

Respectfully Submitted,

Anderson2X, PLLC

By: /s/ Austin W. Anderson
Austin W. Anderson
Federal I.D. No. 777114
State Bar No. 24045189
819 North Upper Broadway
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361)452-1284

Attorney in Charge for Plaintiff
and Class Members

Of Counsel:

Rose Vela
 Federal I.D. 13880
State Bar No. 16958050
275 Calle Jacaranda
Brownsville, Texas 78520
Telephone: (956) 248-7673
Facsimile: (866) 596-2346

N. J. Welsh, IV
Federal I.D. No. 620195
State Bar No. 24037691
426 South Tancahua Street
Corpus Christi, Texas 78401
Telephone: (361) 884-1967
Facsimile: (361) 883-0129

Rick Holstein
Federal I.D. No.  426800
State Bar No.  09915150
819 North Upper Broadway
Corpus Christi, Texas 78401
Telephone: (361) 883-8649
Facsimile: (361) 883-3199

Jordan M. Anderson
Federal I.D. No. 612713
State Bar No. 24051002
819 North Upper Broadway
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284