**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| MAURO SERRANO, III, on behalf of himself and all others similarly situated, | § § § | |
| Plaintiffs, | § § | NO. 2:14-cv-00077 |
| v. | § § | |
| REPUBLIC SERVICES, INC. and BFI WASTE SERVICES OF TEXAS, LP, d/b/a REPUBLIC SERVICES OF CORPUS CHRISTI and d/b/a ALLIED WASTE SERVICES OF CORPUS CHRISTI, | § § § § § § | |
| Defendants. | § | |

**DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This case was filed as a putative collective action on March 13, 2014, but for which a Third Amended Complaint was filed on January 9, 2017, in which Plaintiffs allege that Defendants did not properly compensate them for their on-the-clock "non-production" time and, therefore, did not correctly calculate their regular rate of pay and/or compute their overtime compensation in accordance with the Fair Labor Standards Act ("FLSA"). The case was tried to the bench beginning April 24, 2017, after which the Court makes the following findings of fact and conclusions of law:

**I.    Proposed Findings of Fact**

1.    Defendant Republic Services, Inc. is the parent company of subsidiaries in Texas, and elsewhere, that provide waste collection, disposal, transfer, and recycling services.

2.    Defendant BFI Waste Services of Texas, LP d/b/a Republic Services of Corpus Christi and d/b/a Allied Waste Services of Corpus Christi is a waste disposal company whose ultimate parent is Republic Services, Inc.

3.      Following the narrowing of this case, the remaining Plaintiffs and Opt-In Plaintiffs are 23 waste disposal drivers who were or are employed by Defendant BFI Waste Services of Texas, LP, and work(ed) at Defendants' Corpus Christi, Texas facility as Industrial (a/k/a Roll Off) Drivers from March 13, 2011 through the final disposition of this matter and who filed consent forms to opt-in and join this case.

4.      The Plaintiffs are:  Simon Aleman, Luis Alvarado, Jose Baca, Andrew Benavides, Erasmo Cancino, Luis Flores, Paul Garcia, Gilbert Gonzalez, James Griffin, Joseph Grimm, Mark Hook, Raymond Martos, Rene Medrano, Cesar Moore, Genaro Munguia, Oscar Ortega, Luis Quintera, Jose Rincon, David Salinas, Rene Sanchez, Mauro Serrano III, Michael Soliz, and Gilbert Trevino.

5.      For purposes of trial only and for the purpose of facilitating the Court's resolution of this matter, Defendants agreed not to dispute or contest Plaintiffs' claim that Republic Services, Inc. can be held liable as a "joint employer" under the FLSA. Accordingly, for purposes of this case only, all Plaintiffs were/are considered to be employed by Republic Services, Inc. for purposes of liability under the FLSA.

6.      Plaintiffs were/are at-will employees.  Plaintiffs worked at the Corpus Christi, Texas facility as Roll-Off Drivers for Defendants' industrial line of business.  As Roll-Off Drivers, Plaintiffs drive roll-off container trucks to various industrial or construction/demolition sites to mechanically collect large (10 to 40 cubic yards) containers filled with waste or debris and transport it to the landfill for disposal.  More specifically, and as the Roll Off Driver job description explains, Plaintiffs are "responsible for safely operating a heavy commercial truck . . . to provide prompt and courteous delivery and removal of large containers."  In addition, Plaintiffs' responsibilities as a Roll Off Driver include:

- Performing complete pre- and post-operation inspections of the vehicle in accordance with Company policy to ensure tire pressure, fluid levels, safety equipment, gauges, and controls are in proper working order and to report any safety issues on standard reports;

- Safely operating his or her heavy truck along designated route and to the disposal site; read route sheet, follow map and service each customer as identified on the route sheet or as assigned by the dispatcher and/or supervisor;

- Meeting all qualifications and complying with Department of Transportation regulations; and

- Completing route sheets, vehicle condition reports on a daily basis to ensure that any vehicle defects are repaired in a timely manner, and other reports as required.

7.      Plaintiffs were generally paid pursuant to an incentive compensation pay plan for Roll-Off Drivers at the Corpus Christi facility, although they also received compensation not explicitly listed on the incentive pay plan.  The incentive compensation plan was developed by the General Manager of the Corpus Christi facility and was subject to approval by an Area Vice President and Regional Human Resources Vice President. Although the incentive compensation plan may have changed during the time period relevant to this case, Plaintiffs generally are paid a certain amount for each haul that they make generally dependent on the distance travelled for each haul.  More specifically, Plaintiffs' pay per haul was based on a "zone rate" (dependent on distance from the facility), which ranged from Zone 1 on the low end ($18.50 to $21.50 per haul during the relevant time period) to Zone 8 on the high end ($76.50 to $97.95 per haul during the relevant time period).  Plaintiffs' zone rates were designed to increase as the distance from the facility to the pick-up or delivery site increased.

8.      Plaintiffs also receive additional piece rate payments at varying amounts for things such as turnaround compactors, deliveries and relocates, dump and returns, compactor/receiver box hauls, dead runs and dry runs.

9.      Plaintiffs also receive a day rate—sometimes in addition to their zone rates and sometimes instead of their zone rates.  For example, on days when a Plaintiff did not have as many hauls, he may have received a high day rate (ranging from $112.00 to $137.03) instead of being paid per haul.  Some Plaintiffs who worked as long-haul drivers received a day rate of $75.00 to $80.00 for every day worked plus zone rates.

10.      The day rates paid to Plaintiffs were sufficiently large so that even if a Plaintiff experienced several hours of so-called "non-production" time, he still would be compensated at or above the federal minimum wage of $7.25 per hour.

11.      Plaintiffs also occasionally receive additional pay, called "extra pay."   For example, if a Plaintiff works on a Saturday, he receives a set day rate and an additional $10 per haul for that day.  Because Plaintiffs typically do not have as many hauls on Saturdays, this fixed day rate (in addition to the extra $10 per haul) is meant to provide them with higher compensation on slower days as a trade-off for working on the weekends.

12.      Some pay plans, which Plaintiffs refer to as "Burkel pay plans," determined a dollar amount to be assigned to certain day rates based on, among other things, an estimation of a driver's "non-production" hours. Non-production time under the Burkel Pay Plans applies to Commercial Drivers only.  There is no mention of non-production time for Roll Off Drivers, Further, the "estimates" in those plans relate only to how the *amount* to assign to day rates was determined and had nothing to do with (1) the calculation of the regular rate of pay,  (2) whether or not Plaintiffs were compensated for their actual hours worked each week, or (3) whether Republic agreed to pay Roll Off drivers in Corpus Christi separate or additional amounts for so-called "non-production" time/activities.  When creating or revising pay plans, facilities were not required to follow the "Burkel pay plan(s)" in any respect.

13.     In addition to explaining the general terms of Plaintiffs' compensation, the applicable incentive compensation plan (which was available to Plaintiffs) explains and provides examples of how Roll-Off Driver compensation would be calculated, both in terms of the regular hourly rate and overtime premium.  Specifically, the incentive compensation plan explains that a Roll-Off Driver's regular rate would be calculated by dividing total compensation for the week by total hours worked for the week and that the overtime premium would be paid by dividing the regular rate by two, adding in the regular rate, and multiplying by the number of overtime hours.

14.     Plaintiffs had access to and/or received copies of their pay sheets each week, which detailed their daily and weekly hours worked, their compensation whether in day rates zone/haul rates, other piece rates, extra pay, etc., and the calculations for their overtime pay (if applicable) and total compensation for the week.

15.     Plaintiffs knew that they were not paid separately or additional amounts for so-called non-production activities/time.

16.     Plaintiffs were "on-the-clock" (*i.e.* clocked in to Defendants' timekeeping system) for all hours worked, including all alleged non-production time.

17.     Plaintiffs define non-production time as time spent on tasks other than picking up waste receptacles and depositing them in their respective waste disposal trucks.   More specifically, Plaintiffs define non-production time as traveling to their first waste receptacle, traveling to a landfill or transfer station to empty their vehicle, paperwork and other administrative duties, waiting at the landfill to empty their waste receptacle, spending time on customer service related issues, including but not limited to: access to facilities, locked cans, customer complaints, overflowing receptacles, can blockage issues, downtime (mechanical failures) and Department of Transportation ("DOT") administrative issues.

18.     All of Plaintiffs' "on-the-clock" hours (whether characterized as "production" or "non-production") were properly counted by as actual hours worked and thus were properly included in the calculation of their regular rate for overtime purposes.

19.     Defendants did not miscalculate or under-report Plaintiffs' hours worked each week for purposes of calculating their regular rate and overtime pay.

20.     Defendants calculated each Plaintiff's regular rate each week by taking total compensation for the week divided by total hours worked in the week.

21.     Plaintiffs received compensation at that regular hourly rate, which was above the statutory minimum, for all of their on-the-clock time/actual hours worked each week.

22.     In weeks where they worked overtime, Plaintiffs received an overtime premium for all hours worked over 40 at 0.5 times their regular hourly rate.

23.     Plaintiffs' weekly overtime compensation was calculated as follows:   total compensation for the week received by that Plaintiff through whatever form of compensation was received (*e.g.*, haul/zone rates, day rates, extra pay, or any combination thereof) divided by all actual hours worked that week captured through the timekeeping system, including any so-called "non-production time," to arrive at a weekly regular rate of pay.  Plaintiffs who worked more than 40 hours per week were paid additional overtime premiums by multiplying half of that week's regular rate by all actual hours worked that week in excess of 40, again including any time devoted to "non-production" activities.

24.     There is no evidence that the regular rate for any Plaintiff in any workweek was below the federal minimum wage of $7.25.

25.     Plaintiffs received compensation at an average hourly rate above the statutory minimum for each of their actual hours worked each week.  In addition, Plaintiffs received their

regular hourly rate for all hours up to 40 plus one and one-half times their regular rate for hours in excess of 40, whether that time is characterized as "production" or "non-production" time.

26.     The parties never entered into any agreement to pay separately or additional amounts for "non-production" time/activities.

27.     The amount of time spent by Plaintiffs on various activities, including "non-production" activities varies from day-to-day and Plaintiff to Plaintiff.

28.     Defendants regularly have sought legal advice on the legality of their pay plans and the computation of overtime compensation under them, largely from those experienced in wage-and-hour law at the law firm of Seyfarth Shaw LLP.  Defendants were advised that California law may require that, under California law, employees paid through a piece rate, must be paid separately for certain activities that Plaintiffs here deem to constitute non-production time.  At no time were Defendants advised that non-production time, *under federal law*, must be accounted for or paid separately in the pay plans that are at issue in this case, or in other plans that contain day rate or piece rate components.

## II.     **Proposed Conclusions of Law**

### A.     **Plaintiffs Have Not Met Their Burden Of Proving, With Definite And Certain Evidence, That They Are Owed Additional Compensation For "Non-Production" Time**

1.     There are two protections under the FLSA that provide a private cause of action: (1) employers are required to pay employees at or above a prescribed minimum wage and (2) employers are required to pay an overtime premium if and when employees work more hours in a particular workweek than the statutory threshold.  29 U.S.C. § 216(b) (back pay is recoverable under § 206 (the minimum wage provision) or § 207 (the overtime provision)).  "Absent a showing that an employer failed to compensate an individual at or above the minimum wage or failed to pay the appropriate premium for hours worked in excess of the statutory maximum,

therefore, there exists no cause of action for Plaintiffs to assert under the FLSA." *Spencer v. First Student Mgmt., LLC*, 2016 WL 693252, at *2 (N.D. Ill. Feb. 22, 2016).

2.    Plaintiffs contend that they are entitled to additional overtime compensation for what they have coined "non-production" time—described by Plaintiffs as "time spent on tasks that were not associated with . . . picking up waste receptacles and depositing them in their respective waste disposal trucks" (Dkt. 214 p. 3 ¶ 11)[1]—because, even though Plaintiffs concede that their non-production time was on-the-clock and that they received compensation at an average hourly rate above the federal statutory minimum for all of the hours they were clocked in to Defendants' timekeeping system (including all alleged non-production time), Defendants' incentive compensation plan for the Corpus Christi facility does not separately "account for" non-production activities and Defendants do not provide Plaintiffs separate compensation or a specific hourly rate directly tied or matched to each non-production activity they may perform throughout a workday, which Plaintiffs claim violates the FLSA.

3.    In order to prevail on their claim of unpaid overtime, Plaintiffs have the burden of proving, with definite and certain evidence, that they performed work for which they were not properly compensated.  *See, e.g.*, *Samson v. Apollo Resources, Inc.*, 242 F.3d 629, 636 (5th Cir. 2001) (holding that a plaintiff suing under the FLSA carries the burden of proving he or she was not properly compensated); *Ford v. Houston Independent Sch. Dist.*, 97 F. Supp. 3d 866, 892

---

[1]    In their Third Amended Complaint, Plaintiffs defined non-production time as "landfill waiting time, landfill dumping time, downtime, vehicular mechanical failure, traffic delays, customer service related issues, customer wait time, customer delay time, route delays, manifest changes, and DOT inspections." (Dkt. 159 ¶ 63).  In their Joint Pretrial Order, Plaintiffs defined non-production time as "traveling to their first waste receptacle, traveling to a landfill or transfer station to empty their vehicle, paperwork and other administrative duties, waiting at the landfill to empty their waste receptacle, spending time on customer services related issues, including but not limited to: access to facilities, locked cans, customer complaints, overflowing receptacles, can blockage issues, downtime (mechanical failures) and Department of Transportation ("DOT") administrative issues."

(S.D. Tex. 2015) ("[I]t is well established that the plaintiff bears the burden of proving that he was not properly paid for the work he performed."); *Givens v. Will Do, Inc. Houston*, 2012 WL 1597309, at *3 (S.D. Tex. May 4, 2012) ("Because it is neither a defense nor an exemption to FLSA coverage, the employee bears the burden of proving" that the employer's regular rate and overtime calculations do not comply with the FLSA.).

> **1.      Defendants Properly Calculated Plaintiffs' Regular Rate And Plaintiffs Received Straight Time Compensation For All Hours Worked**

4.      The undisputed facts at trial demonstrate that Plaintiffs received straight time compensation for all hours worked, including alleged non-production time.  Plaintiffs concede that they were "on-the-clock" (*i.e.*, clocked in to Defendants' timekeeping system) for all time spent on non-production activities.  Plaintiffs reviewed and verified the accuracy of their time records on a weekly basis.  Plaintiffs have already received compensation for all of their actual hours worked each workweek, including their on-the-clock non-production time, plus overtime compensation for all hours over 40 each workweek.  Plaintiffs do not assert a FLSA minimum wage claim or otherwise contend that their average hourly wage fell below the statutory minimum of $7.25 per hour in any workweek.

5.      To calculate Plaintiffs' regular rate each week, Defendants added up each Plaintiff's total compensation for the week (regardless of whether through haul/zone rates, other piece rates, day rates, extra pay, etc.) and divided that total compensation by the Plaintiff's total hours worked in the week.  Defendants paid Plaintiffs that regular rate for each hour they worked that week, including hours worked over 40 (*i.e.*, the "1.0" or straight "time" component for all hours worked each workweek).  This "total compensation divided by total hours worked" approach that Defendants used to calculate Plaintiffs' regular rate each week is precisely the calculation required under the FLSA.  *See, e.g.*, 29 C.F.R. § 778.109; *Chavez v. City of*

*Albuquerque*, 630 F.3d 1300, 1311-13 (10th Cir. 2011) (holding that "the first step in calculating the regular rate over a particular week is to total the week's straight time pay and add-ons" and this total should then be divided by the "actual hours worked by the employee" to obtain the regular rate; in short, "the FLSA hourly regular rate is calculated by dividing the relevant weekly compensation by the actual hours worked").

6.     In every week that Plaintiffs worked for Defendants, their computed hourly regular rate was higher than the statutory minimum of $7.25 per hour.  An employer does not violate the minimum wage provision of the FLSA when the employee's average hourly rate over all hours worked in the workweek exceeds the applicable minimum wage.  *See, e.g.*, *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 490 (2d Cir. 1960) (holding that an employee did not have a valid FLSA claim because his average weekly salary exceeded the minimum wage); *Monahan v. Cnty. of Chersterfield*, 95 F.3d 1263, 1270-72 (4th Cir. 1996) (employees who received at least an average hourly wage exceeding the minimum wage has no valid FLSA claims); *Hensley v. MacMillan Bloedel Containers, Inc.*, 786 F.2d 353, 357 (8th Cir. 1986) (No violation of the FLSA occurs "so long as the total weekly wage paid by an employer meets the minimum weekly requirements of the statute, such minimum weekly requirement being equal to the number of hours actually worked that week multiplied by the minimum hourly statutory requirement."); *Adair v. City of Kirkland*, 185 F.3d 1055, 1063 (9th Cir. 1999) (interpreting the FLSA as rejecting "any minimum wage claim [employees] might have brought . . . [if] their salary, when averaged across their total time worked, still paid them above minimum wage").

> **a.     The FLSA Does Not Require That Defendants Separately Pay For Or Directly Tie Or Match Plaintiffs' Compensation To Each Non-Production Activity**

7.      Plaintiffs contend that, because Defendants do not assign, tie, or match their compensation (by the hour, piece, day rate, etc.) to each alleged non-production activity they may perform, Defendants violated the FLSA.  The FLSA imposes no such requirement.  FLSA compliance is measured on a weekly basis, not hour by hour or task by task.  *See, e.g.*, *Hensley*, 786 F.2d at 357 (reversing district court judgment in favor of employee as "clearly erroneous" where truck driver claimed that because he was paid by the mile he was not properly compensated under the FLSA for nonproductive task such as pre-trip inspections and paperwork, and holding that where the employee's weekly pay, "translated into an hourly rate for all hours worked"— including the time spent on nonproduction activities—"was well beyond the statutory minimum, . . . the FLSA has not been violated"); *Carman v. Meritage Homes Corp.*, 37 F. Supp. 3d 860, 866-67 n.4 (S.D. Tex. 2014); *Taylor v. McLane Foodservice, Inc.*, 2013 WL 943531 (D. Kan. Mar. 11, 2013); *Balasanyan v. Nordstrom*, 913 F. Supp. 2d 1001 (S.D. Cal. 2012); *Johnson v. RGIS Inventory Specialists*, 554 F. Supp. 2d 693, 710 (E.D. Tex. 2007) (rejecting argument that "the FLSA requires hour-by-hour compliance").

8.      The principle that Plaintiffs advance—that any employee compensated at least in part on a piece-rate basis must be compensated for non-production activities separate from any piece-rate compensation—exists under, and is unique to, California state wage-hour law.  *See* Cal. Labor Code § 226.2 (requiring that "employees compensated on a piece-rate basis during a pay period" must "be compensated for rest and recovery periods and other nonproductive time separate from any piece-rate compensation").  This principle does not exist under the FLSA.  *See Armenta v. Osmose, Inc.*, 135 Cal.App.4th 314, 323 (2005) (recognizing that the FLSA and California wage-hour law "differ significantly" and that California law requires that employers separately account for each hour worked and that compensation be directly tied to the activity

being performed); *Cardenas v. McLane Foodservice, Inc.*, 796 F. Supp. 2d 1246, 1251-52 (C.D. Cal. 2011) (recognizing that under California law, unlike federal law, a piece-rate pay formula is only valid to the extent that a piece rate is directly tied to each activity being performed).

9.     Indeed, as the United States Department of Labor explained in an Opinion Letter issued to a piece rate employee who inquired about payment for nonproductive down time:  as long as the employee's total earnings in the week in question divided by your total hours worked (including the 'down time') equaled at least [the applicable minimum wage] an hour, you were properly paid insofar as the FLSA is concerned."  1981 DOL WH LEXIS 10, DOL Opinion Letter (July 14, 1981).  The DOL went on to explain that the FLSA does not "contain any provision requiring that an individual paid on a piece-rate basis be compensated for the 'down time' as such."  *Id.*  Further, and as this Court has recognized for an employee paid at least in part on a piece rate basis, "all remuneration is presumed as being compensation for all hours worked" under the FLSA.  *Serrano v. Republic Servs., Inc.*, 2017 WL 24306, at *3 (S.D. Tex. Jan. 3, 2017) (Ramos, J.).  Accordingly, this Court declines Plaintiffs' request to import this California-specific requirement into the FLSA.

10.     Particularly instructive is *Taylor v. McLane Foodservice, Inc.*, 2013 WL 943531 (D. Kan. Mar. 11, 2013).  In *Taylor*, the plaintiffs were delivery truck drivers who were paid for "core" duties pursuant to a piece rate formula but also "perform[ed] other duties which [were] not covered by the piece rate formula and for which they [were] not otherwise compensated at an hourly rate or other rate of pay such as pre-trip and post-trip duties (*e.g.*, paperwork, vehicle inspection, gathering receipts)."  *Id.* at *1.  Plaintiffs in *Taylor* also were "not compensated for time spent waiting for customers . . . and time spent driving to and from gas or weigh stations."  *Id.*  The plaintiffs sought to recover under the FLSA based on the theory that they were not paid

for hours spent performing compensable work that was not directly or explicitly covered by the piece rate formula. *Id.* at *2. The court recognized, based on the "clear weight and trend of authority," that such a claim was "not viable under the FLSA when workers have received at least the minimum wage for the pertinent pay period." *Id.* In dismissing the plaintiffs' complaint, the *Taylor* court stated:

> The court also notes that the FLSA does not prohibit employers from compensating employees through non-hourly means of compensation, such as the piece rate system used by defendant here. The court cannot believe that Congress intended to permit employers to utilize such means of compensation only to require those employers to use an hourly compensation system for any work that is not a component of the piece rate system. The hourly increment, of course, is undisputedly a simple and practical measuring rod for testing compliance with the FLSA even for those employers who do not pay their employees on an hourly basis. For that reason, translating a piece-rate worker's wages into an average hourly rate seems like a workable method for determining minimum wage compliance under the FLSA. But when that average hourly rate is at or above the federal minimum wage level, no violation of the FLSA has occurred.

*Id.* at *7 (citations and quotations omitted).

11.    Neither *Rodriguez v. Carey Int'l, Inc.*, 2004 WL 5582173 (S.D. Fla. Sept. 15, 2004) nor *Coffin v. Blessey Marine Servs., Inc.*, 2012 WL 1016013 (S.D. Tex. Mar. 23, 2012) changes this analysis. *Rodriguez* found that certain tasks other than driving customers (i.e., waiting time, driving between jobs, meeting time) were "compensable," but that the plaintiffs, who were classified as independent contractors and for whom no time records were maintained, were not paid for that time. Here, unlike in *Rodriguez* and *Coffin*, Defendants acknowledge that what Plaintiffs have coined as non-production time *is* compensable and Plaintiffs do not dispute that they have already been compensated for that time. Indeed, Plaintiffs concede that their "non-production time" was "on-the-clock" and the undisputed facts establish that Plaintiffs received compensation at an average hourly rate above the federal statutory minimum for all of their "on-the-clock" hours (*i.e.*, the hours they were clocked in to Republic's timekeeping

system), including all alleged "non-production time." *Rodriguez* recognized that where, as here, Plaintiffs have already received compensation for their actual "on-the-clock" hours, only additional half time is required for overtime hours (because Plaintiffs total incentive pay covered their straight time compensation for all hours worked during the week), which Plaintiffs in this case have already received.  2004 WL 5582173 at *8.  Similarly, *Coffin* denied the employer's motion for summary judgment because the plaintiffs were misclassified as exempt, and stated that, "[t]o the extent Plaintiffs can prove that they worked more than 40 hours in a given week and were not paid at all for those additional hours, they would be entitled to additional compensation at one and one-half times their regular hourly rate if they prevail on this lawsuit." 2012 WL 1016013 at *2.  Again, the undisputed facts here establish that Plaintiffs received compensation for all of their actual hours worked each workweek (including "on-the-clock" "non-production time"), plus overtime compensation for all hours over 40 each workweek. Further, the *Coffin* case was appealed and the United States Court of Appeals for the Fifth Circuit vacated the District Court's decision and remanded for entry of judgment in favor of the employer.  772 F.3d 276, 285 (5th Cir. 2014).

12.     Plaintiffs' reliance on *Colindres v. QuietFlex Manufacturing*, 427 F. Supp. 2d 737 (S.D. Tex. 2006) and *Olivo v. Crawford Chevrolet Inc.*, 799 F. Supp. 2d 1237 (D.N.M. 2011) is also misplaced.  Unlike this case, both *Colindres* and *Olivo* involved claims that the plaintiffs were not paid for *off-the-clock* non-production time, and thus considered whether such time is compensable under the FLSA. 427 F. Supp. 2d at 743, 753, 757; 799 F. Supp. 2d at 1240. Plaintiffs here do not dispute that their non-production time was on-the-clock or that they received compensation at an average hourly rate above the federal statutory minimum for all of the hours they were clocked in to Republic's timekeeping system, including all alleged non-

production time.  Indeed, there is no question here that Plaintiffs' on-the-clock non-production time is compensable.  As the court in *Olivo* recognized, "[t]here is no set manner in which an employer must pay employees for unproductive time, but the employer must comply with FLSA in whatever way it chooses to compensate its employees." 799 F. Supp. 2d at 1241.  Here, the undisputed facts establish that Plaintiffs have already received compensation for all of their actual hours worked each workweek (including "on-the-clock" "non-production time"), plus overtime compensation for all hours over 40 each workweek.

13.     Even if this Court were to read in to the FLSA the California-specific requirements regarding payments for non-production time, Plaintiffs would not be entitled to any additional or separate compensation because all of the alleged non-productive activities for which they seek compensation (*e.g.*, traveling to the first waste container, traveling to a landfill, waiting at the landfill to empty their container) are necessary, integral, indispensable, intrinsic, and/or directly related to the productive activities for which they are compensated by haul/zone rates.  *See, e.g.*, *Cole v. CRST, Inc.*, 2017 WL 1234215, at *8 (C.D. Cal. Mar. 30, 2017) (ruling against truck driver employee on his claim that he was entitled to additional compensation because he was paid on a piece-rate basis for miles driven and was not paid separately for additional non-driving tasks he performed while on duty, finding that, even under California wage hour law, a driver need not be compensated separately for activities that are related directly to driving because they are already covered by the piece-rate pay based on miles driven).

14.     In addition, even assuming that Plaintiffs are entitled to compensation for non-production activities, their claims fail because they were, in fact, paid for those activities in the form of day rates, extra pay, and even by their piece rates.  For example, many Plaintiffs are paid at least in part by a day rate, which necessarily covers all work performed by that employee that

day, including both productive time and non-productive time.   Plaintiffs also have been compensated for any non-production activities through additional payments on top of piece rates such as extra pay.   Further, Plaintiffs' piece rates themselves are based on a zone rate which is dependent on the distance travelled for each haul, which means that Plaintiffs' piece rates have already compensated them for all time spent driving.

> **b.   Plaintiffs Have No Cognizable Straight-Time Claim Under The FLSA**

15.   Plaintiffs claim that they are entitled to recover alleged unpaid straight time pay for non-production time in weeks in which they worked over 40 hours per week.   A straight-time claim "is one in which an employee . . . seeks recovery of unpaid time worked." *Carman*, 37 F. Supp. 3d at 866.   But here, Plaintiffs admit that they were on-the-clock for all alleged non-production time and the undisputed facts at trial establish that Plaintiffs received compensation at an average hourly rate above the federal statutory minimum for all of their on-the-clock hours (*i.e.*, the hours they were clocked in to Republic's timekeeping system), including all alleged non-production time.   Thus, there is no "unpaid time" for which Plaintiffs may recover.   *See, e.g.*, *Spencer*, 2016 WL 693252, at *2 ("Absent a showing that an employer failed to compensate an individual at or above the minimum wage or failed to pay the appropriate premium for hours worked in excess of the statutory maximum, therefore, there exists no cause of action for Plaintiffs to assert under the FLSA.").

16.   The FLSA does not provide a cause of action for the recovery of straight-time pay that exceeds the minimum wage.   Courts, including courts in this District, recognize that Plaintiffs' straight time claim is "not cognizable under the FLSA" even when they worked overtime. *See Karna v. BP Corp. N. Am., Inc.*, 11 F. Supp. 3d 809, 816-17 (S.D. Tex. 2014) ("[J]ust as a 'gap time' claim is not cognizable under the FLSA, neither is [plaintiff's] overtime

'gap time' analogue."); *Carman*, 37 F. Supp. 3d at 867 ("[S]o long as section 206 is not violated, an employee may not recover for straight time claims under the FLSA . . . even when the employee has worked overtime."); *see, e.g.*, *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 116 (2d Cir. 2013) ("[T]he text of FLSA requires only payment of minimum wages and overtime wages . . . It simply does not consider or afford a recovery for gap-time hours . . . So long as an employee is being paid the minimum wage or more, FLSA does not provide recourse for unpaid hours below the 40-hour threshold, even if the employee also works overtime hours the same week."); *Murphy v. First Student Mgmt. LLC*, 2017 WL 346977, at *4 (N.D. Ohio Jan. 24, 2017) ("[R]ecovery of gap time is not conferred by the FLSA, regardless of whether overtime work is alleged."); *Rosario v. First Student Mgmt. LLC*, 2016 WL 4367019, at *4-6 (E.D. Pa. Aug. 16, 2016) ("[T]he plain text of the FLSA does not afford redress for uncompensated gap time hours" or "overtime gap time claims"); *Spencer*, 2016 WL 693252, at *2 (The FLSA does not "implicitly provide a third private right of action—the recovery of straight time pay that exceeds the minimum wage"—even when the employee has worked overtime.); *Gomley v. Crossmark, Inc.*, 2015 WL 1825481, at *6 (D. Idaho Apr. 22, 2015) ("The plain language of the FLSA does not encompass gap time pay—whether it be pure gap time or overtime gap time."); *Bassett v. Tenn. Valley Auth.*, 2013 WL 2902821, at *11 (W.D. Ky. June 13, 2013) ("The FLSA provides no cause of action for the recovery of straight time in excess of the minimum wage, even when the plaintiff seeks payment of overtime wages.").

17.     Plaintiffs contend that 29 C.F.R. §§ 778.315 and/or 778.318—part of the Department of Labor's ("DOL") interpretation[2] of the FLSA's overtime requirements—creates a

---

[2]     Part 778 is not a regulation but "constitutes the official interpretation of the Department of Labor with respect to the meaning and application of the maximum hours and overtime pay requirements contained in section 7 of the Act." 29 C.F.R. § 778.1. The DOL's interpretive

straight-time cause of action not found within the statutory language of the FLSA.  That same argument, however, was rejected by the Second Circuit, which dismissed the interpretative guidance upon which Plaintiffs now rely as unpersuasive. *Lundy,* 711 F.3d at 116-17 n.9 (recognizing § 778.315 as a "flawed interpretation" to the extent it "suggests that an employer could violate FLSA by failing to compensate an employee for gap time worked when the employee also works overtime," noting that the DOL's interpretation provides "no statutory support or reasoned explanation" and is therefore not persuasive or due any deference). As the Second Circuit recognized, "the text of the FLSA requires only payment of minimum wages and overtime wages. It simply does not consider or afford a recovery for gap-time hours." *Id.* at 116 (holding that "so long as an employee is being paid the minimum wage or more, FLSA does not provide recourse for unpaid hours below the 40-hour threshold, even if the employee also works overtime hours the same week").

18.     In addition, the argument that 29 C.F.R. §§ 778.315 and/or 778.318 creates a straight-time cause of action has been soundly rejected by the courts that have considered the issue since *Lundy*, including a court in this District. *See, e.g.*, *Carman*, 37 F. Supp. 3d at 866 ("The Second Circuit correctly observed that the text of the FLSA requires employers to pay minimum and overtime wages but does not provide a recovery for gap time hours. . . . If the plaintiffs wish to recover for allegedly unpaid straight time wages, they must look to state employment and contract law."); *Murphy*, 2017 WL 346977, at *3 ("29 U.S.C. §§ 206 and 207 clearly encompass the protection of 'minimum wage' and 'maximum hours,' respectively, but

---

bulletin was not issued pursuant to notice and comment rulemaking procedures required for formal regulations. 33 Fed. Reg. 986 (1968) (preamble). As such, courts have held that the interpretations "do not command formal deference." *See, e.g.*, *Lupien v. City of Marlborough*, 387 F.3d 83, 88 n.3 (1st Cir. 2004); *Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 678-79, 681 (7th Cir. 2010) (noting that the FLSA interpretive bulletin is a "dubious source of authority" and entitled only to a "measure of respect," not full *Chevron* deference).

not gap time. Because the meaning of the statute is clear and unambiguous, the Court need not—

and does not—look beyond the plain meaning of the statute itself in giving effect to the statute

and consequently does not afford the Department of Labor's interpretation any weight.

Accordingly, this Court . . . holds that recovery of gap time is not conferred by the FLSA,

regardless of whether overtime work is alleged."); *Gomley*, 2015 WL 1825481, at *6 ("The

Court agrees with the Second Circuit's ruling. The plain language of the FLSA does not

encompass gap time pay."); *Bassett*, 2013 WL 2902821, at *11 ("[T]he Court agrees with the

reasoning and the statutory analysis underlying *Lundy*.").   As a district court in Wisconsin

explained:

> Section 215 of the FLSA lists "prohibited acts" as being a violation of § 206
> (minimum wage provision), § 207 (maximum hours provision), § 212 (child labor
> provision), § 211(c) (record keeping requirements) or regulations issued under
> § 214 (records requirement for employment of apprentices and those whose
> earning capacity is impaired by certain characteristics). It does not include in the
> list a violation for failure to pay straight or gap time wages or the overall
> compensation anticipated by an employee agreement. In addition, the relief
> afforded employees aggrieved by violations of § 206 or § 207 is limited to "the
> amount of their unpaid minimum wages, or their unpaid overtime compensation,
> as the case may be, and in an additional equal amount as liquidated damages." 29
> U.S.C. § 216(b). The statute makes no mention of relief in the form of unpaid
> regular wages for a violation of the maximum hours provision. Stated simply, the
> FLSA provides no avenue for the recovery of straight-time pay. Moreover,
> although the regulations provide interpretation for applying the overtime and
> minimum wage requirements, they cannot create new causes of action for
> uncompensated straight-time.

*Espenscheid v. DirectSat USA, LLC*, 2011 WL 10069108, at *13 (W.D. Wis. Apr. 11,

2011); *Murphy*, 2017 WL 346977, at 3.

### c.   Defendants Were Not Required To Comply With 29 C.F.R. § 778.315 Or 29 C.F.R. § 778.318

19.    Plaintiffs contend that the FLSA requires that the parties have a pre-existing

agreement to incorporate both productive and non-productive work in to a piece rate payment

plan.   In support of this argument, Plaintiffs point to 29 C.F.R. §§ 778.315 and .318.

Significantly, 29 C.F.R. §§ 778.315 and .318 are not regulations, but rather are interpretive guidance provided by the DOL; the DOL's interpretive guidance does not "create new causes of action" or create any legally enforceable right. *Lundy*, 711 F.3d at 116 ("Unlike regulations . . . interpretations are not binding and do not have the force of law." *Espenscheid*, 2011 WL 10069108, at *13 (29 C.F.R. § 778.315 and other DOL interpretations "cannot create new causes of action").

20.     Section 778.318 is titled "Productive and nonproductive hours of work" and provides as follows:

(a)     *Failure to pay for nonproductive time worked*. Some agreements provide for payment only for the hours spent in productive work; the work hours spent in waiting time, time spent in travel on the employer's behalf or similar nonproductive time are not made compensable and in some cases are neither counted nor compensated. Payment pursuant to such an agreement will not comply with the Act; such nonproductive working hours must be counted and paid for.

(b)     *Compensation payable for nonproductive hours worked*. The parties may agree to compensate nonproductive hours worked at a rate (at least the minimum) which is lower than the rate applicable to productive work. In such a case, the regular rate is the weighted average of the two rates, as discussed in § 778.115 and the employee whose maximum hours standard is 40 hours is owed compensation at his regular rate for all of the first 40 hours and at a rate not less than one and one-half times this rate for all hours in excess of 40. (See § 778.415 for the alternative method of computing overtime pay on the applicable rate.) In the absence of any agreement setting a different rate for nonproductive hours, the employee would be owed compensation at the regular hourly rate set for productive work for all hours up to 40 and at a rate at least one and one-half times that rate for hours in excess of 40.

(c)     *Compensation attributable to both productive and nonproductive hours*. The situation described in paragraph (a) of this section is to be distinguished from one in which such nonproductive hours are properly counted as working time but no special hourly rate is assigned to such hours because it is understood by the parties that the other compensation received by the employee is intended to cover pay for such hours. For example, while it is not proper for an employer to agree with his pieceworkers that the hours spent in down-time (waiting for work) will not be paid for or will be neither paid for nor counted, it is permissible for the parties to agree that the pay the employees will earn at piece rates is intended to compensate them for all hours worked, the productive as well as the nonproductive hours. If this is the agreement of the parties, the regular rate of the pieceworker will be the rate determined by dividing the total piecework earnings by the total hours worked (both productive and nonproductive) in the workweek. Extra

compensation (one-half the rate as so determined) would, of course, be due for each hour worked in excess of the applicable maximum hours standard.

21.    Like the other examples set forth in the DOL's interpretive bulletin, § 778.318 merely provides an example of how the regular rate may be calculated under the circumstances described—*i.e.*, when parties agree to compensate nonproductive hours worked at a rate lower than the rate applicable to productive work.   An employer is not required to comply with § 778.318 or any of the other examples provided in the interpretive bulletin. *See Lalli v. Gen. Nutrition Ctrs., Inc.*, 814 F.3d 1, 10 n.11 ("We do not mean to imply, however, that a pay scheme must fall within a regulatory example in order to comply with the [FLSA].").

22.    A court in this District recently rejected the argument that an employer can "violate" the examples set forth in the DOL's interpretive bulletin. *See Hanson v. Camin Cargo Control, Inc.*, 2015 WL 1737394, at *6 (S.D. Tex. Apr. 16, 2015) ("If the employer's compensation scheme does not fit in the scenario described in [the interpretive bulletin], then that section does not apply by its own terms. But it does not follow that there has been a 'violation' of [the section].").   As this Court has also recognized, the DOL's interpretive bulletin "does not prohibit particular pay structures," it merely "give[s] some examples of the proper method of determining the regular rate of pay in particular instances."  *Serrano*, 2017 WL 24306, at *3 (Ramos, J.) (rejecting argument that defendants' hybrid compensation scheme was "unlawful" and violated the FLSA if it did not comply with one of the examples in the DOL's interpretive bulletin, instead holding that, in such circumstances, the example, "by its own terms, does not apply").

23.    Because Defendants were not obligated by the FLSA to have an agreement or understanding with Plaintiffs that their compensation would incorporate or cover both productive

and non-productive time/activities, Plaintiffs cannot rely on the interpretive guidance found in § 778.318 to create an obligation that did not otherwise exist.

24.     If § 778.318 does not apply because there is no agreement to pay separately or additional amounts for non-production time/activities, then the regular rate is determined by dividing total remuneration in a workweek by the total number of hours actually worked in that workweek and an additional half time is required for all hours over 40 in the workweek. 29 C.F.R. § 778.109; *see Hanson*, 2015 WL 1737394, at *6. This is precisely the calculation that Republic used to determine Plaintiffs' regular rate and overtime pay.

25.     Even if an agreement or understanding that their haul/zone piece-rate pay compensated Plaintiffs for all hours worked, including both production and non-production time, was required, that requirement of Section 778,318(c) is satisfied here.  Plaintiffs were at-will employees.  Plaintiffs testified that they knew they would be paid on a piece-rate basis based on haul/zone pay.  Defendants' compensation plan explained that Plaintiffs would be paid a certain amount for each haul that they made dependent on the distance travelled for each haul. Defendants' compensation plan explained and provided examples of how Plaintiffs' regular rate and overtime pay would be calculated each week, specifically showing that the regular rate was total compensation divided by total hours worked that week.  Plaintiffs received pay sheets each week detailing that their piece rate payments compensated them for all activities and all hours worked that week, including production and non-production time.  Plaintiffs worked overtime and accepted pay under this pay structure for the duration of their employment.  Accordingly, the facts and circumstances of Plaintiffs' employment establish that each had an agreement or understanding with Defendants that their total compensation each week (whether by piece rate, day rate, hourly pay, or any combination thereof) compensated them for all hours worked,

including both productive and non-productive time.  *See, e.g., Lindsey v. DynCorp Intern. LLC*, 385 F. App'x 414, 415-16 (5th Cir. 2010) (holding that an employee who continues working with knowledge of the changes to compensation policy "has accepted the changes as a matter of law"); *Moran v. Ceiling Fans Direct, Inc.*, 239 F. App'x 931, 936-37 (5th Cir. 2007) ("When the employer notifies an employee of changes to the at-will employment contract and the employee continues working with knowledge of those changes, the employee has accepted those changes as a matter of law."); *Amador v. Guardian Installed Servs., Inc.*, 575 F. Supp. 2d 924, 929-30 (N.D. Ill. 2008) (finding an agreement or understanding of a piece rate compensation system existed where plaintiffs were provided with an example explaining it and the method of compensation and where plaintiffs had worked overtime hours and accepted pay under the piece rate compensation structure for approximately seven months); *Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 229 (Tex. 1986) ("[W]hen the employer notifies an employee of changes in employment terms, the employee must accept the new terms or quit. If the employee continues working with knowledge of the changes, he has accepted the changes as a matter of law."); *Bell v. Phillips*, 2002 WL 576036, at *7 (Tex. Ct. App. Apr. 18, 2002) ("[B]y continuing with [his employer] and accepting the modifications in the commission structure, [employee] gave up any right to claim anything other than commissions owing under the parties' modified agreement.").

26.     This rule applies when the employee continues to work, even under protest. *See, e.g., Amador*, 575 F. Supp. 2d at 929 (finding agreement or understanding of piece rate compensation plan where plaintiffs continued to work under plan even after complaining that they were dissatisfied with it and were not being properly paid); *Dillard Dep't Stores, Inc.*, 198 S.W.3d 778, 780-81 (Tex. 2006) (finding that employee who refused to sign form acknowledging new arbitration policy but continued working accepted policy as a matter of law);

*see also Perkins v. Ulrich*, 2007 WL 1191903, at *3 (Tex. Ct. App. Apr. 24, 2007) (employee accepted revised commissions plan/agreement when he continued to work for defendant, even under protest).

> d. **Defendants Properly Calculated Plaintiffs' Regular Rate As Total Compensation Divided By Total Hours Worked**

27.     Plaintiffs appear to argue that the "true regular rate" should have been calculated by dividing total wages, not by their total hours worked each week, but by some smaller increment equal to the number of hours for which their piece rates were "intended" to compensate them.  Such a method would require calculation of a separate regular rate for each type and combination of payment(s) received by each Plaintiff (*i.e.*, piece rates, day rates, hourly rates) and would require employers to match a specific part of compensation to each discrete job task and unit of time worked—a novel approach that is not required under the FLSA.

28.     Such an argument was rejected in *Abbey v. U.S.*, 99 Fed. Cl. 430, 443 (2011). There, the plaintiffs claimed that the employer "improperly reduced [their] regular rates of pay by dividing [total compensation] by all hours worked in a workweek rather than" dividing total compensation by the lesser number of hours "for which this compensation was paid."  *Id.* Specifically, the *Abbey* plaintiffs argued, under a regulation nearly identical to 29 C.F.R. § 778.109,[3] that because their piece rates (in the form of incentive pay and premium pay) were only "intended to compensate [them] for non-overtime hours: 40 hours per week," their regular

---

[3]     *Abbey* involved the interpretation of FLSA regulations applicable to employees of the Federal Aviation Administration, specifically 5 C.F.R. § 551.512, which states that "[a]n employee's 'hourly regular rate' is computed by dividing the total remuneration paid to an employee in the workweek by the total number of hours of work in the workweek for which such compensation was paid." Section 551.512 is nearly identical to 29 C.F.R. § 778.109, applicable here, which states that "[t]he regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid."

rate should have been computed by dividing their total compensation by 40 hours, "the total number of hours *for which such compensation was paid*." *Id.* The court rejected this argument, stating that the regulation explaining how to calculate the regular hourly rate of pay did not include the word "intended" or the phrase "intended to compensate" and that "the phrase 'the total number of hours of work in the workweek for which such compensation was paid' [refers] to the hours an employee actually works." *Id.* at 444 ("An employee is typically paid compensation for the hours an employee works during the workweek."). Accordingly, the court held that

> The language 'the total number of hours of work in the workweek *for which such compensation was paid*,' . . . means the total number of hours actually worked in the workweek by an employee. In other words, the [employer] properly calculates the hourly regular rate portion of plaintiffs' overtime entitlement by dividing the total remuneration paid to an employee in the workweek by the total number of hours worked by the employee in the workweek.

*Id.* at 446. This is exactly how Defendants calculated the Plaintiffs' regular rate of pay.

29.     The FLSA requires that a single regular rate be calculated for all hours worked in a week, even when an employee earns different rates of pay within one workweek. *See* 29 C.F.R. §§ 778.110-.122. Further, the FLSA requires that the regular rate be calculated "by dividing [an employee's] total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109. Notably, the DOL did not include the phrase "intended to compensate" in § 778.109. If the Department of Labor had wanted the general rule for calculating the "regular hourly rate" to be total remuneration for employment in any workweek divided by the hours that remuneration was "intended to compensate," the DOL could have—and would have—used the phrase "intended to compensate" in 29 C.F.R. § 778.109 just as it did in 29 C.F.R. § 778.113. *See Abbey*, 99 Fed. Cl. at 445. Instead, the language "the total

number of hours actually worked by him in that workweek for which such compensation was paid" contained in 29 C.F.R. § 778.109 means the total number of hours actually worked in the workweek by an employee.  *See id.* at 446.  Accordingly, Defendants properly calculated the regular hourly rate portion of Plaintiffs' overtime entitlement by dividing the total remuneration paid in the workweek by the total number of hours worked by the employee in the workweek.

> **2.    Defendants Properly Paid Plaintiffs An Overtime Premium Equal To One-Half Times His Regular Rate**

30.    Because Defendants properly calculated Plaintiffs' regular rate by dividing their total wages each week by their total hours worked and paid them that regular rate for each hour worked that week, including hours worked over 40 (*i.e.*, the "1.0" or straight "time" component for all hours worked each workweek), Plaintiffs were paid an additional half-time overtime premium for hours worked in excess of 40 in the week (*i.e.*, the "0.5" or "and one-half" component for the overtime hours each workweek), thereby providing the required "one and one-half times the regular rate" for all overtime hours.  That is precisely the calculation required by the FLSA.  *See Alamo v. U.S.*, 850 F.3d 1349 (Fed. Cir. 2017) ("Broadly speaking, the FLSA gives employees their normal compensation for a regularly scheduled overtime hour, plus an additional halftime bonus."); *see, e.g.*, *Flood v. New Hanover Cnty.*, 125 F.3d 249, 252 (4th Cir. 1997) ("Since the employer has already paid the employee a regular rate of pay for all of the hours that the employee worked, including the overtime hours, it only has to pay an additional one-half time pay premium for the overtime hours."); *Samson.*, 242 F.3d at 634 ("[S]ince the employee already receives 100% of his regular rate of pay for each overtime hour worked, the time and one-half overtime provision of 29 U.S.C. § 207(a)(1) requires that the employee receive only an additional 50% of his regular rate for each overtime hour."); *Chavez*, 630 F.3d at 1313 (rejecting argument "that the FLSA requires that [employees] receive the regular rate for all

hours worked *and* the regular rate and one-half for overtime hours" as "without merit" because "[u]nder that scenario, the [e]mployees would receive two and one-half times the regular rate for each overtime hour worked, which is more than the one and one-half that the FLSA requires"); *Zumerling v. Devine*, 769 F.2d 745, 753 (Fed. Cir. 1985) ("one-half pay when added to straight time pay totals the one and one-half time rate mandated by law").

31.     Plaintiffs appear to argue that they are entitled to additional compensation for their overtime hours because, as they claim, there was no agreement or understanding that their piece rates were intended as compensation for all hours worked, including both productive and non-productive hours.  As another district court has recognized, "[t]he argument is difficult to understand, but appears to be based on § 778.111(a)'s language that '[o]nly additional half-time pay is required in such cases where the employee has already received straight-time compensation at piece rates or by supplementary payments for all hours worked.'"  *Gunter v. Rudder Capital Corp.*, 2010 WL 4121859, at *2 (D. Minn. Oct. 14, 2010).  Here, just as in *Gunter*, Plaintiffs allege that they did not receive compensation "for all hours worked" because "there was no agreement that the piece-rate compensation was intended to cover non-productive hours, such as travel and down time."  *Id.*  According to Plaintiffs, because they did not receive compensation for "all hours worked," they are entitled to something more than "additional half-time pay" for their overtime hours.  As the *Gunter* court recognized, however, Plaintiffs' "argument is easily rejected because it conflates two violations of the FLSA: under compensation of overtime hours and no compensation for non-productive hours.  Employees, certainly, must be compensated for non-productive work hours. . . [b]ut the remedy for unpaid non-productive hours is compensation for those non-productive hours—it is not overcompensation for overtime hours."  *Id.*

27

32.     Here, Plaintiffs concede that all of their alleged non-production time was on-the-clock and that they were paid for all on-the-clock hours worked.  Because Plaintiffs were already compensated at their regular rate for all hours worked, including their overtime hours (*i.e.*, the "1.0" or straight "time" component for all hours worked each workweek), Defendants paid Plaintiffs an additional half-time overtime premium for hours worked in excess of 40 in the week (*i.e.*, the "0.5" or "and one-half" component for the overtime hours each workweek), thereby providing the required "one and one-half times the regular rate" for all overtime hours.  Because Defendants' method of compensating Plaintiffs, both in terms of calculating their regular rate and overtime premiums, fully complies with the FLSA, no violation of the FLSA has occurred and Plaintiffs are not entitled to any additional payment.

**B.     Even If The Court Found Liability, The Court Cannot Enter Judgment In Plaintiffs' Favor On A Collective Basis**

33.     Plaintiffs' claim for pay for "non-production" time was plead for the first time on January 9, 2017.  It has not been certified as a collective action.  Indeed, Plaintiffs have not moved to have this claim certified (either conditionally or ultimately) for collective treatment. Even if the Court were to find liability, allowing Plaintiffs to recover on their "non-production" time claim a collective basis would be improper and contrary to the FLSA because it would effectively abolish Plaintiffs' burden to establish ultimate collective-action certification and because it would violate Defendants' due process right to raise individualized defenses.

34.     Moreover, the Court finds that Plaintiffs have not established that a collective trial is appropriate or that the Court can render a judgment in Plaintiffs' favor on a collective basis on this claim.  The Plaintiffs are not similarly situated, there is no standard definition of what constitutes "non-production" time, and the Plaintiffs themselves do not agree on what activities are "non-production."  Indeed, some Plaintiffs testified that they typically spent a certain number

of hours per day on what Plaintiffs call "non-productive time," but the Court has no basis on which to conclude that those testifying Plaintiffs are representative of anyone else and thus cannot find liability on a collective basis in a fair and manageable way without depriving Defendants of the opportunity to raise individual defenses. *See, e.g., Wilson v. Navika Capital Grp., LLC*, 2014 WL 223211, at *15 (S.D. Tex. Jan. 17, 2014) (refusing to ultimately certify a collective action because the plaintiffs had not proposed a plan for using representative testimony); *Roussell v. Brinker Int'l*, 2008 WL 2714079, at *22 (S.D. Tex., July 9, 2008) (same). This matters for liability, as opposed to merely damages, because, under Plaintiffs' theory, a Roll-Off Driver who receives a day rate of $7.25 and who performs an hour of non-productive activity in a day would not be entitled relief, while a roll-off driver receiving the same rate and who performs an hour and one-half of non-productive activity, however that is defined, would be entitled to a half hour of pay at minimum wage ($3.63).

35.    *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) does not render representative testimony appropriate here because Plaintiffs failed to establish that Defendants violated their statutory duty to keep proper timekeeping records or that Defendants' timekeeping records were inaccurate or inadequate.   Defendants' timekeeping records are complete and accurate and could be used to determine liability, if there were any. Plaintiffs have failed to sufficiently challenge these records by credible evidence for the Court to disregard or modify them.   Moreover, Plaintiffs have failed to introduce evidence sufficiently specific or definite to rebut Defendants' calculations and evidence of liability.   Moreover, Plaintiffs' estimates of unpaid overtime hours worked for non-production time were therefore not subject to just or reasonable inference and where insufficient to establish unpaid hours worked on a collective basis.

29

36.     Moreover, Plaintiffs never offered or attempted to use a trial plan to establish collective liability.  While representative testimony can be permitted, there has been no effort to determine how the witnesses called for trial are representative and it appears that they were handpicked by Plaintiffs' counsel based on some combination of the witnesses' ability to testify consistent with Plaintiffs' theory of the case and availability to testify at trial.  There is nothing "representative" about such a method.  At bottom, all this trial was about was whatever number of Plaintiffs testifying about their own experiences.  The Court has no basis to apply the testimony of the testifying Plaintiffs to the non-testifying Plaintiffs.  *See, e.g., Wilson*, 2014 WL 223211, at *15; *Roussell*, 2008 WL 2714079, at *22.

## C.     Even If The Court Found Liability On Plaintiffs' Non-Production Time Claim, Plaintiffs Would Be Limited To Back Pay For A Period Of Two Years

37.     Even if the Court were to find liability, Plaintiffs would be limited to back pay for a period of two years.  The FLSA statute of limitations is two years, but can be extended to three years for willful violations.  29 U.S.C. § 255(a).  A violation is "willful" if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133 (1988).  An employer acts with reckless disregard when it acts, or fails to act, with a conscious lack of concern for the consequences.  *Singer v. City of Waco*, 324 F.3d 813 (5th Cir. 2003).  Plaintiffs have the burden to prove that Defendants willfully violated the FLSA. *Cox v. Brookshire Grocery Co*., 919 F.2d 354, 356 (5th Cir. 1990).

38.     An employer's erroneous interpretation of the FLSA is not willful where the legal issue involves an unsettled question of law. *See Reich v. Gateway Press, Inc.*, 13 F.3d 685, 702-03 (3d Cir. 1995) (defendant's erroneous interpretation of FLSA was not willful, particularly where legal issue involved unsettled question of law); *Lugo v. Farmer's Pride, Inc.*, 802 F. Supp.

2d 598, 618 (E.D. Pa. 2011) (holding as a matter of law that employer was not on notice that its policy violated the FLSA and did not willfully violate the FLSA based on "the absence of binding Third Circuit precedent on" the specific issue of the case); *Valladon v. City of Oakland*, 2009 U.S. Dist. LEXIS 97485, at *35 (N.D. Cal. Oct. 20, 2009) ("The Court agrees with defense counsel's assertion . . . that the unsettled nature of the law governing compensation for donning and doffing means that the failure to compensate for it cannot have been a willful violation.").

39.     At worst, any violation by Defendants with respect to non-production time involves a legal issue where the law is unsettled and there is no binding precedent.  Accordingly, the Court cannot find that Defendants committed a willful violation of the FLSA.

**D.     Even If The Court Found Liability On Plaintiffs' Non-Production Time Claim, Plaintiffs Would Not Be Entitled To Liquidated Damages**

40.     Plaintiffs are not entitled to liquidated damages because Defendants have sustained the good faith defense to liquidated damages.  Under the FLSA, an employer "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional amount equal to liquidated damages."  29 U.S.C. § 216(b).  The amount of "liquidated damages" may be reduced or denied altogether if the employer proves to the Court both that (1) it acted with subjective good faith; and (2) its action were objectively reasonable. *Mireles v. FrioFoods, Inc.*, 899 F.2d 1407, 1415 (5th Cir. 1990).

41.     Good faith under the FLSA requires a subjective showing by the employer that it "had an honest intention to ascertain what the Act requires and to act in accordance with it." *Brantley v. Inspectorate Am. Corp.*, 821 F. Supp. 2d 879, 895 (S.D. Tex. 2011) (quoting *Dybach v. State of Fla. Dept. of Corrs.*, 942 F.2d 1562, 1566 (11th Cir. 1991).

42.     The reasonableness of an employer's conduct with respect to a potential FLSA violation and the "good faith" defense is evaluated as an objective standard.  *Brock v. El Paso Natural Gas Co.*, 826 F.2d 369, 371 (5th Cir. 1987).  Thus, a reasonable belief may be found where the employer "engaged in the acts proven to be violations [of the FLSA] but did so under a mistaken, although reasonable belief, that its acts were in conformity with the law."  *See Martinez v. Food City, Inc.*, 658 F.2d 369, 376 (5th Cir. 1981); *see also see Hill v. J.C. Penny Co., Inc.*, 688 F.2d 370 (5th Cir. 1982) (refusing to award liquidated damages even though the DOL had previously investigated the defendant twice before for the same offense, because the defendant had relied on the advice of counsel and made a good faith effort to understand and comply with the FLSA).

43.     Reliance on the advice of counsel can establish good faith and lack of willfulness. *Reed v. Murphy*, 232 F.2d 668, 678 (5th Cir. 1956) ("While the employer does not need [to rely on] the administrative ruling, policy or practice (of the DOL) as a condition to the relief under [Section 260], the existence of it is a factor bearing on his conduct."); *Lee v. Coahoma Cnty., Miss.*, 937 F.2d 220, 227 (5th Cir. 1991) (affirming the district court's finding of good faith and reasonableness where, among other things, the defendant sought advice of counsel in structuring the compensation plan and consulted with the DOL); *Pabst v. Okla. Gas & Elec. Co.*, 228 F.3d 1128, 1136 (10th Cir. 2000) (evidence that the employer relied on attorneys is "particularly persuasive" in finding good faith and holding FLSA violations reasonable); *Pignataro v. Port Auth. of N.Y. & N.J.*, 2008 WL 3582799, at *3 (D.N.J. Aug. 11, 2008) (defendant's reliance on review by legal department was reasonable and supported determination of good-faith), *aff'd*, 593 F.3d 265 (3d Cir. 2010); *Clark v. Centene Co. of Tex., L.P.*, 44 F. Supp. 3d 674, 686 (W.D. Tex. 2014) (denying Plaintiff's motion for summary judgment and finding a fact issue on the

"good faith" defense because there was "some evidence [the employer] evaluated Plaintiffs' job duties and exempt statuses, and relied on federal regulations in making its decision").

44.     The "closeness of the question" may be considered in determining whether to impose liquidated damages under the FLSA. *Brock v. Claridge Hotel and Casino*, 846 F.2d 180, 187 (3d Cir. 1988); *see also Colunga v. Young*, 722 F. Supp. 1479 (W.D. Mich. 1989) (awarding no liquidated damages where Defendant had reasonable grounds for believing plaintiffs were independent contractors in light of the conflicting case law defining 'employee' under the FLSA).

45.     Defendants have shown that experienced wage-and-hour counsel were consulted to determine the legality of various features of the pay plans that were at issue in this case. While counsel had advised the Defendants that recent case authority counseled in favor of paying separately for non-productive time under California law, counsel did not advise that a failure to include separate payments for non-production time would violate the FLSA.  Further, the question presented in this case is a rather novel one for which there is no binding authority holding that non-production time must be paid for separately under federal law.  Accordingly, the Court finds that Defendants exercised good faith and that Plaintiffs are not entitled to liquidated damages.

DATED:  April 18, 2017

Respectfully submitted,

SEYFARTH SHAW LLP

By:  /s/ Noah A. Finkel

Noah A. Finkel (*admitted pro hac vice*)
nfinkel@seyfarth.com
Kara L. Goodwin (*admitted pro hac vice*)
kgoodwin@seyfarth.com
233 South Wacker Drive, Suite 8000
Chicago, Illinois 60606-6448
Telephone:   (312) 460-5913
Facsimile:    (312) 460-7913

ATTORNEY-IN-CHARGE FOR DEFENDANTS
REPUBLIC SERVICES, INC., BFI WASTE
SERVICES OF TEXAS, LP, REPUBLIC
WASTE SERVICES OF TEXAS, LTD., AND
ALLIED WASTE SERVICES, INC.

**OF COUNSEL:**

Esteban Shardonofsky
S.D. Texas ID 615928
Texas State Bar No. 24051323
sshardonofsky@seyfarth.com
700 Milam Street, Suite 1400
Houston, TX  77002-2812
Telephone: (713) 225-2300
Facsimile:  (713) 225-2340

ATTORNEY FOR DEFENDANTS
REPUBLIC SERVICES, INC., BFI WASTE
SERVICES OF TEXAS, LP, REPUBLIC
WASTE SERVICES OF TEXAS, LTD., AND
ALLIED WASTE SERVICES, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2017, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court for the Southern District of Texas, using the electronic case filing system of the court.  The electronic case filing system of the court sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

Austin W. Anderson
Lauren Braddy
Clif Alexander
Anderson2X, PLLC
819 North Upper Broadway
Corpus Christi, TX  78401

/s/ Esteban Shardonofsky
Esteban Shardonofsky