**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| MAURO SERRANO, III, on behalf of himself and all others similarly situated, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | |
| REPUBLIC SERVICES, INC. and BFI WASTE SERVICES OF TEXAS, LP, d/b/a REPUBLIC SERVICES OF CORPUS CHRISTI and d/b/a ALLIED WASTE SERVICES OF CORPUS CHRISTI, | § § § § § § | No. 2:14-cv-00077 |
| Defendants. | § § | |

## DEFENDANTS' MOTION FOR JUDGMENT ON PARTIAL FINDINGS

Defendants Republic Services, Inc., and BFI Waste Services of Texas, LP, d/b/a Republic Services of Corpus Christi and d/b/a Allied Waste Services of Corpus Christi, respectfully move this Court for judgment on partial findings pursuant to Federal Rule of Civil Procedure 52(c).

I.      **Legal Standard And Trial Facts**

Rule 52(c) provides:

> If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.  The court may, however, decline to render any judgment until the close of the evidence.  A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a).

Fed. R. Civ. P. 52(c).

This case was filed as a putative collective action on March 13, 2014, but for which a Third Amended Complaint was filed on January 9, 2017, in which Plaintiffs allege that Defendants did not properly compensate them for their on-the-clock "non-production" time and, therefore, did not correctly calculate their regular rate of pay and/or compute their overtime

compensation in accordance with the Fair Labor Standards Act ("FLSA").  A bench trial was

held beginning April 25, 2017.  Five Plaintiffs testified at trial: Maura Serrano, Jose Rincon,

Andrew Benavides, Jose Baca, and Rene Sanchez.  Plaintiffs rested their case in chief on April

27, 2017.[1]  Plaintiffs have been "fully heard" on their on-the-clock non-production time claim

and the Court has heard all of the evidence bearing on crucial issues of fact; thus this motion is

timely.  *See* Fed. R. Civ. P. 52(c);  *Samson v. Apollo Resources, Inc.*, 242 F.3d 629, 632 (5th Cir.

2001) ("Judgment on partial findings entered under Rule 52(c) is to be made after the district

court has heard all of the 'evidence bearing on crucial issues of fact."); *Western Trading v. Bell

Avon*, 81 F.3d 155 (5th Cir. 1996) ("A rule 52(c) judgment is made after the court has heard all

the evidence bearing on the crucial issue of fact, and the finding is reversible only if the appellate

court finds it to be clearly erroneous.").

　　　　When considering a motion under Rule 52(c), the court weighs and resolves conflicts in

the evidence, and "decides in which party's favor the preponderance of the evidence lies."  9C

Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2573.1 (3d ed. 2016).

"Rule 52(c), unlike Rule 50, does not require the district court to draw any inferences in favor of

the non-moving party and permits the court to make a determination in accordance with its own

view of the evidence."  *Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 963-64 n.1 (5th

Cir. 2016) (affirming grant of Rule 52(c) motion on FLSA overtime claim); *see, e.g.*, *Culpepper

v. LA-I Gaming*, 203 F.3d 827 (5th Cir. 1999) ("When issuing a judgment on partial findings, a

district court is not required to draw any special inferences in favor of the nonmoving party.");

*Miles-Hickman v. David Powers Homes, Inc.*, 613 F. Supp. 2d 872, 880 (S.D. Tex. 2009) (Under

Rule 52, "the Court is not required to draw any inferences in favor of the non-moving party, as

---

[1]　　At the close of Plaintiffs' case in chief, Defendants made an oral motion for partial findings pursuant to Fed. R. Civ. P. 52(c).

38869882v.1

would be required for a motion for judgment as a matter of law under Rule 50, but can make findings in accordance with its own view of the evidence.").

Defendants' motion for judgment on partial findings pursuant to Rule 52(c) should be granted because it is Plaintiffs burden of proving, with definite and certain evidence, that they performed work for which they were not properly compensated. Plaintiffs have failed to meet their burden. The evidence at trial established:

- Plaintiffs—23 waste disposal drivers who work(ed) at Defendants' Corpus Christi, Texas facility as Industrial (a/k/a Roll Off) Drivers—were/are at-will employees.

- As Roll-Off Drivers, Plaintiffs drive roll-off container trucks to various industrial or construction/demolition sites to mechanically collect large (20 to 40 cubic yards) containers filled with waste or debris and transport it to the landfill for disposal.

- Plaintiffs generally were paid pursuant to an incentive compensation pay plan for Roll-Off Drivers at the Corpus Christi facility, although they also received compensation not explicitly listed on the incentive pay plan.

- Plaintiffs generally are paid a certain amount for each haul that they make dependent on the distance travelled for each haul. More specifically, Plaintiffs' pay per haul was based on a "zone rate" (dependent on distance from the facility), which ranged from Zone 1 on the low end ($18.50 to $21.50 per haul during the relevant time period) to Zone 8 on the high end ($76.50 to $97.95 per haul during the relevant time period).

- Plaintiffs' zone rates were designed to increase as the distance from the facility to the pick-up or delivery site increased.

- Plaintiffs also receive additional piece rate payments at varying amounts for things such as turnaround compactors, deliveries, relocates, and dead runs/dry runs.

- Plaintiffs also receive a day rate—for example, on days when a Plaintiff did not have as many hauls, he may have received a high day rate (ranging from $112.00 to $137.03) instead of being paid per haul.

- Some Plaintiffs who worked as long-haul drivers received a day rate of $75.00 to $80.00 for every day worked plus zone rates.

- Plaintiffs also occasionally receive additional pay, called "extra pay." For example, if a Plaintiff works on a Saturday, he receives a set day rate and an additional $10 per haul for that day. Because Plaintiffs typically do not have as many hauls on Saturdays, this fixed day rate (in addition to the extra $10 per haul) is meant to provide them with higher compensation on slower days.

3

- Plaintiffs knew that they were not paid separately or additional amounts for so-called non-production activities/time.  The parties never entered into any agreement to pay separately or additional amounts for "non-production" time/activities.

- Plaintiffs were "on-the-clock" (*i.e.* clocked in to Defendants' timekeeping system) for all hours worked, including all alleged non-production time.

- All of Plaintiffs' "on-the-clock" hours (whether characterized by Plaintiffs as "production" or "non-production") were properly counted as actual hours worked and thus were properly included in the calculation of their regular rate for overtime purposes.

- Defendants calculated each Plaintiff's regular rate each week by taking total compensation for the week divided by total hours worked in the week.

- Plaintiffs received compensation at that regular hourly rate, which was above the statutory minimum, for all of their on-the-clock time/actual hours worked each week. There is no evidence that the regular rate for any Plaintiff in any workweek was below the federal minimum wage of $7.25.

- In weeks where they worked overtime, Plaintiffs received an overtime premium for all hours worked over 40 at 0.5 times their regular hourly rate.

- Plaintiffs' weekly overtime compensation was calculated as follows:  total compensation for the week received by that Plaintiff through whatever form of compensation was received (*e.g.*, haul/zone rates, day rates, extra pay, or any combination thereof) divided by all actual hours worked that week captured through the timekeeping system, including any so-called "non-production time," to arrive at a weekly regular rate of pay.  Plaintiffs who worked more than 40 hours per week were paid additional overtime premiums by multiplying half of that week's regular rate by all actual hours worked that week in excess of 40, again including any time devoted to "non-production" activities.

- Plaintiffs worked their routes on their own, unsupervised.  The amount of time spent by Plaintiffs on various activities, including "non-production" activities, varies from day to day and Plaintiff to Plaintiff.  Plaintiffs have no personal knowledge as to the day to day activities of other Plaintiffs or the amount of time spent on those activities.

## II. Judgment on Partial Findings Is Appropriate Because Plaintiffs Have Not Met Their Burden Of Proving, With Definite And Certain Evidence, That They Are Owed Additional Compensation For "Non-Production" Time

There are two protections under the FLSA that provide a private cause of action: (1)

employers are required to pay employees at or above a prescribed minimum wage and (2)

employers are required to pay an overtime premium if and when employees work more hours in

a particular workweek than the statutory threshold.  29 U.S.C. § 216(b) (back pay is recoverable

4

under § 206 (the minimum wage provision) or § 207 (the overtime provision)).  "Absent a showing that an employer failed to compensate an individual at or above the minimum wage or failed to pay the appropriate premium for hours worked in excess of the statutory maximum, therefore, there exists no cause of action for Plaintiffs to assert under the FLSA."  *Spencer v. First Student Mgmt., LLC*, 2016 WL 693252, at *2 (N.D. Ill. Feb. 22, 2016).

Plaintiffs contend that they are entitled to additional overtime compensation for what they have coined "non-production" time—described by Plaintiffs as "time spent on tasks that were not associated with . . . picking up waste receptacles and depositing them in their respective waste disposal trucks"[2]—but the evidence introduced at trial establishes that Plaintiffs were on-the-clock and received compensation at an average hourly rate above the federal statutory minimum for all of the hours they were clocked in to Defendants' timekeeping system (including all alleged non-production time).  The evidence at trial further establishes that Plaintiffs received an overtime premium for all hours worked over 40 each week.

To calculate Plaintiffs' regular rate each week, Defendants added up each Plaintiff's total compensation for the week (regardless of whether through haul/zone rates, other piece rates, day rates, extra pay, etc.) and divided that total compensation by the Plaintiff's total hours worked in the week.  Defendants paid Plaintiffs that regular rate for each hour they worked that week, including hours worked over 40 (*i.e.*, the "1.0" or straight "time" component for all hours worked each workweek).  This "total compensation divided by total hours worked" approach that Defendants used to calculate Plaintiffs' regular rate each week is precisely the calculation required under the FLSA.  Plaintiffs were then paid an additional half-time overtime premium for hours worked in excess of 40 in the week (*i.e.*, the "0.5" or "and one-half" component for the

---

[2]     The testimony at trial demonstrated that there does not appear to be a uniform understanding of what constitutes non-production time even among the testifying Plaintiffs.

overtime hours each workweek), thereby providing the required "one and one-half times the regular rate" for all overtime hours, which, again, is precisely the calculation required by the FLSA.  Because Plaintiffs have properly been paid their regular rate and overtime compensation for all hours worked, Plaintiffs cannot prevail on their FLSA claim.  Accordingly, judgment should be granted in Defendants' favor.

Plaintiffs contended at trial that, because Defendants do not assign, tie, or match their compensation (by the hour, piece, day rate, etc.) to each alleged non-production activity they may perform, Defendants violated the FLSA.  The FLSA imposes no such requirement.  FLSA compliance is measured on a weekly basis, not hour by hour or task by task.  The principle that Plaintiffs advance—that any employee compensated at least in part on a piece-rate basis must be compensated for non-production activities separate from any piece-rate compensation—exists under, and is unique to, California state wage-hour law, and does not exist under the FLSA.

Indeed, as the United States Department of Labor explained in an Opinion Letter issued to a piece rate employee who inquired about payment for nonproductive down time:  as long as the employee's total earnings in the week in question divided by your total hours worked (including the 'down time') equaled at least [the applicable minimum wage] an hour, you were properly paid insofar as the FLSA is concerned."  1981 DOL WH LEXIS 10, DOL Opinion Letter (July 14, 1981).  The DOL went on to explain that the FLSA does not "contain any provision requiring that an individual paid on a piece-rate basis be compensated for the 'down time' as such."  *Id.*  Further, and as this Court has recognized for an employee paid at least in part on a piece rate basis, "all remuneration is presumed as being compensation for all hours worked" under the FLSA.  *Serrano v. Republic Servs., Inc.*, 2017 WL 24306, at *3 (S.D. Tex.

Jan. 3, 2017) (Ramos, J.).  Accordingly, the Court should reject Plaintiffs' request to import this California-specific requirement into the FLSA.

Even if this Court were to read in to the FLSA the California-specific requirements regarding payments for non-production time, Plaintiffs would not be entitled to any additional or separate compensation because all of the alleged non-productive activities for which they seek compensation (*e.g.*, traveling to the first waste container, traveling to a landfill, waiting at the landfill to empty their container, and traveling back to the yard after the final landfill dump of the day) are necessary, integral, indispensable, intrinsic, and/or directly related to the productive activities for which they are compensated by haul/zone rates.  *See, e.g.*, *Cole v. CRST, Inc.*, 2017 WL 1234215, at *8 (C.D. Cal. Mar. 30, 2017) (ruling against truck driver employee on his claim that he was entitled to additional compensation because he was paid on a piece-rate basis for miles driven and was not paid separately for additional non-driving tasks he performed while on duty, finding that, even under California wage hour law, a driver need not be compensated separately for activities that are related directly to driving because they are already covered by the piece-rate pay based on miles driven).

In addition, even assuming that Plaintiffs are entitled to compensation for non-production activities, their claims fail because they were, in fact, paid for those activities in the form of day rates (which necessarily covers all work performed by that employee that day, including both productive time and non-productive time), extra pay, and even by their piece rates themselves (which are based on zone rates dependent on the distance travelled for each haul, which means that Plaintiffs' piece rates have already compensated them for all time spent driving).

Plaintiffs have no cognizable straight-time claim under the FLSA.  Plaintiffs admit that they were on-the-clock for all alleged non-production time and the undisputed facts at trial

establish that Plaintiffs received compensation at an average hourly rate above the federal statutory minimum for all of their on-the-clock hours (*i.e.*, the hours they were clocked in to Republic's timekeeping system), including all alleged non-production time.  Thus, there is no "unpaid time" for which Plaintiffs may recover.

Although Plaintiffs contend that 29 C.F.R. §§ 778.315 and/or 778.318—part of the Department of Labor's ("DOL") interpretation of the FLSA's overtime requirements—creates a straight-time cause of action not found within the statutory language of the FLSA, that same argument was rejected by the Second Circuit, which dismissed the interpretative guidance upon which Plaintiffs now rely as unpersuasive. *Lundy,* 711 F.3d at 116-17 n.9 (recognizing § 778.315 as a "flawed interpretation" to the extent it "suggests that an employer could violate FLSA by failing to compensate an employee for gap time worked when the employee also works overtime," noting that the DOL's interpretation provides "no statutory support or reasoned explanation" and is therefore not persuasive or due any deference).  As the Second Circuit further recognized, "the text of the FLSA requires only payment of minimum wages and overtime wages. It simply does not consider or afford a recovery for gap-time hours." *Id.* at 116 (holding that "so long as an employee is being paid the minimum wage or more, FLSA does not provide recourse for unpaid hours below the 40-hour threshold, even if the employee also works overtime hours the same week").  In addition, the argument that 29 C.F.R. §§ 778.315 and/or 778.318 creates a straight-time cause of action has been soundly rejected by the courts that have considered the issue since *Lundy*, including a court in this District.  *See Karna v. BP Corp. N. Am., Inc.*, 11 F. Supp. 3d 809, 816-17 (S.D. Tex. 2014) ("[J]ust as a 'gap time' claim is not cognizable under the FLSA, neither is [plaintiff's] overtime 'gap time' analogue."); *Carman*, 37

8

F. Supp. 3d at 867 ("[S]o long as section 206 is not violated, an employee may not recover for straight time claims under the FLSA . . . even when the employee has worked overtime.")

Plaintiffs contend that the FLSA requires that the parties have an agreement to incorporate both productive and non-productive work in to a piece rate payment plan.  In support of this argument, Plaintiffs point to 29 C.F.R. §§ 778.315 and .318.  Significantly, 29 C.F.R. §§ 778.315 and .318 are not regulations, but rather are interpretive guidance[3] provided by the DOL; the DOL's interpretive guidance does not "create new causes of action" or create any legally enforceable right.  *Lundy*, 711 F.3d at 116 ("Unlike regulations . . . interpretations are not binding and do not have the force of law."  *Espenscheid*, 2011 WL 10069108, at *13 (29 C.F.R. § 778.315 and other DOL interpretations "cannot create new causes of action").  Like the other examples set forth in the DOL's interpretive bulletin, § 778.318 merely provides an example of how the regular rate may be calculated under the circumstances described—*i.e.*, when parties agree to compensate nonproductive hours worked at a rate lower than the rate applicable to productive work.  An employer is not required to comply with § 778.318 or any of the other examples provided in the interpretive bulletin.  *See Lalli v. Gen. Nutrition Ctrs., Inc.*, 814 F.3d 1, 10 n.11 ("We do not mean to imply, however, that a pay scheme must fall within a regulatory example in order to comply with the [FLSA].").

---

[3]      Part 778 is not a regulation but "constitutes the official interpretation of the Department of Labor with respect to the meaning and application of the maximum hours and overtime pay requirements contained in section 7 of the Act." 29 C.F.R. § 778.1. The DOL's interpretive bulletin was not issued pursuant to notice and comment rulemaking procedures required for formal regulations. 33 Fed. Reg. 986 (1968) (preamble). As such, courts have held that the interpretations "do not command formal deference." *See, e.g.*, *Lupien v. City of Marlborough*, 387 F.3d 83, 88 n.3 (1st Cir. 2004); *Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 678-79, 681 (7th Cir. 2010) (noting that the FLSA interpretive bulletin is a "dubious source of authority" and entitled only to a "measure of respect," not full *Chevron* deference).

Because Defendants were not obligated by the FLSA to have an agreement or understanding with Plaintiffs that their compensation would incorporate or cover both productive and non-productive time/activities, Plaintiffs cannot rely on the interpretive guidance found in § 778.318 to create an obligation that did not otherwise exist.  Additionally, a court in this District recently rejected the argument Plaintiffs advance here—that an employer can "violate" the examples set forth in the DOL's interpretive bulletin. *See Hanson v. Camin Cargo Control, Inc.*, 2015 WL 1737394, at *6 (S.D. Tex. Apr. 16, 2015) ("If the employer's compensation scheme does not fit in the scenario described in [the interpretive bulletin], then that section does not apply by its own terms. But it does not follow that there has been a 'violation' of [the section].").  As this Court has recognized, the DOL's interpretive bulletin "does not prohibit particular pay structures," it merely "give[s] some examples of the proper method of determining the regular rate of pay in particular instances."  *Serrano*, 2017 WL 24306, at *3 (Ramos, J.) (rejecting argument that defendants' hybrid compensation scheme was "unlawful" and violated the FLSA if it did not comply with one of the examples in the DOL's interpretive bulletin, instead holding that, in such circumstances, the example, "by its own terms, does not apply").

If § 778.318 does not apply because there is no agreement to pay separately or additional amounts for non-production time/activities, then the regular rate is determined by dividing total remuneration in a workweek by the total number of hours actually worked in that workweek and an additional half time is required for all hours over 40 in the workweek. 29 C.F.R. § 778.109. That is precisely the calculation used by Defendants in calculating each Plaintiff's regular hourly rate of pay each week.

Even if an agreement or understanding that their haul/zone piece-rate pay compensated Plaintiffs for all hours worked, including both production and non-production time, was required here, that requirement of Section 778.318(c) is satisfied based on the evidence at trial:

- Plaintiffs were at-will employees.

- Plaintiffs testified that they knew they would be paid on a piece-rate basis based on haul/zone pay.

- Most of the Plaintiffs received a copy of Exhibit C to Defendants' compensation plan, which explained that Plaintiffs would be paid a certain amount for each haul that they made dependent on the zone/distance travelled for each haul.

- Plaintiffs received pay sheets each week detailing that their piece rate payments compensated them for all activities and all hours worked that week, including production and non-production time.

- Plaintiffs worked overtime and accepted pay under this pay structure for the duration of their employment.

Accordingly, the facts and circumstances of Plaintiffs' employment as established at trial demonstrate that each had an agreement or understanding with Defendants that their total compensation each week (whether by piece rate, day rate, hourly pay, or any combination thereof) compensated them for all hours worked that week, including both productive and non-productive time.  *See, e.g.*, *Lindsey v. DynCorp Intern. LLC*, 385 F. App'x 414, 415-16 (5th Cir. 2010) (holding that an employee who continues working with knowledge of the changes to compensation policy "has accepted the changes as a matter of law"); *Moran v. Ceiling Fans Direct, Inc.*, 239 F. App'x 931, 936-37 (5th Cir. 2007) ("When the employer notifies an employee of changes to the at-will employment contract and the employee continues working with knowledge of those changes, the employee has accepted those changes as a matter of law."); *Amador v. Guardian Installed Servs., Inc.*, 575 F. Supp. 2d 924, 929-30 (N.D. Ill. 2008) (finding an agreement or understanding of a piece rate compensation system existed where plaintiffs were provided with an example explaining it and the method of compensation and

11

where plaintiffs had worked overtime hours and accepted pay under the piece rate compensation structure for approximately seven months); *Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 229 (Tex. 1986) ("[W]hen the employer notifies an employee of changes in employment terms, the employee must accept the new terms or quit. If the employee continues working with knowledge of the changes, he has accepted the changes as a matter of law."); *Bell v. Phillips*, 2002 WL 576036, at *7 (Tex. Ct. App. Apr. 18, 2002) ("[B]y continuing with [his employer] and accepting the modifications in the commission structure, [employee] gave up any right to claim anything other than commissions owing under the parties' modified agreement.").  This rule applies when the employee continues to work, even under protest. *See, e.g.*, *Amador*, 575 F. Supp. 2d at 929 (finding agreement or understanding of piece rate compensation plan where plaintiffs continued to work under plan even after complaining that they were dissatisfied with it and were not being properly paid); *Dillard Dep't Stores, Inc.*, 198 S.W.3d 778, 780-81 (Tex. 2006) (finding that employee who refused to sign form acknowledging new arbitration policy but continued working accepted policy as a matter of law); *see also Perkins v. Ulrich*, 2007 WL 1191903, at *3 (Tex. Ct. App. Apr. 24, 2007) (employee accepted revised commissions plan/agreement when he continued to work for defendant, even under protest).  Accordingly, judgment on partial findings is appropriate.

Plaintiffs' claim that they are entitled to additional compensation for their overtime hours because there was no agreement or understanding that their piece rates were intended as compensation for all hours worked, including both productive and non-productive hours, "is difficult to understand, but appears to be based on § 778.111(a)'s language that '[o]nly additional half-time pay is required in such cases where the employee has already received straight-time compensation at piece rates or by supplementary payments for all hours worked.'"  *Gunter v.*

*Rudder Capital Corp.*, 2010 WL 4121859, at *2 (D. Minn. Oct. 14, 2010).  According to Plaintiffs, because they did not receive compensation for "all hours worked," they are entitled to something more than "additional half-time pay" for their overtime hours.  As the *Gunter* court recognized, however, Plaintiffs' "argument is easily rejected because it conflates two violations of the FLSA: under compensation of overtime hours and no compensation for non-productive hours.  Employees, certainly, must be compensated for non-productive work hours. . . [b]ut the remedy for unpaid non-productive hours is compensation for those non-productive hours—it is not overcompensation for overtime hours."  *Id.*

Each of the Plaintiffs testified at trial that all of their alleged non-production time was on-the-clock.  Plaintiffs admitted at trial they were paid for all of their on-the-clock hours (*i.e.*, the hours they were clocked in to Defendants' timekeeping system).  Because Plaintiffs were already compensated at their regular rate for all hours worked, including their overtime hours (*i.e.*, the "1.0" or straight "time" component for all hours worked each workweek), Defendants paid Plaintiffs an additional half-time overtime premium for hours worked in excess of 40 in the week (*i.e.*, the "0.5" or "and one-half" component for the overtime hours each workweek), thereby providing the required "one and one-half times the regular rate" for all overtime hours.  Defendants' method of compensating Plaintiffs, both in terms of calculating their regular rate and overtime premiums, fully complies with the FLSA; as such, no violation of the FLSA has occurred and Plaintiffs are not entitled to any additional payment.  Accordingly, a Rule 52(c) judgment on partial findings is appropriate.

## III.   Plaintiffs Have Failed To Meet Their Burden Of Proving Their Non-Production Time Claim Can Be Maintained As A Collective Action

Plaintiffs' claim for pay for "non-production" time was plead for the first time on January 9, 2017.  It has not been certified as a collective action.  Plaintiffs have not moved to have this

claim certified (either conditionally or ultimately) for collective treatment.  Plaintiffs' have failed to meet their burden to establish that their non-production time claim is appropriate for collective treatment.  *Proctor v. Allsups Convenience Stores, Inc.*, 250 F.R.D. 278 (N.D. Tex. 2008) (granting motion to decertify FLSA collective action and noting that "the burden is on the Plaintiff to prove that the individual class members are similarly situated").  The testimony at trial shows a large factual variety even among the five testifying Plaintiffs' claims, showing that they are not similarly-situated to each other or to the 18 remaining non-testifying Plaintiffs.  For example, the trial testimony established:

- There is no standard definition of what constitutes "non-production" time in the industry or at Republic, and the testifying Plaintiffs themselves do not agree on what activities are "non-production" and whether or not they were paid for such activities through their haul/zone pay.  For example, Serrano and Sanchez testified that their haul/zone pay compensated them from the time they lifted the container at the client's site to the time they dumped the container at the landfill.  In contrast, Rincon testified that his haul/zone rate only covers the time he spends lifting up or setting down a container - according to Rincon, it does not cover the time spent traveling to the landfill.  In contrast, Baca and Benavides testified that they did not know what their haul/zone pay covered.

- The quantity of time and the pattern of non-production time also varies among the five testifying Plaintiffs and sometimes even within the same Plaintiff's experiences.  For example, Rincon testified that he routinely had mechanical issues causing down time when he was driving an older truck but when he got a newer truck to drive, his incidents of down time were "close to never."  Likewise, Serrano testified that he had less down time when he drove a newer truck.  In contrast, Baca testified that he had a truck that was consistently breaking down and that he experienced a lot more mechanical issues than other drivers..  Serrano testified that he experienced 2-3 can blockages each day and that each took 15-20 minutes to resolve.  In contrast, Benavides testified that he experienced can blockages "at times" and that they took approximately 25-30 minutes to resolve each time.

- Three of the non-testifying Plaintiffs were employed as Long-Haul Drivers and received a set day rate of $75.00 to $80.00 for every day worked plus zone rates, making them dissimilar to the remaining Roll-Off Drivers, who generally are paid a certain amount for each haul that they make dependent on the distance travelled for each haul.  No Long Haul Drivers testified at trial.

14

In addition, Plaintiffs testified that they work their routes alone and do not have personal knowledge as to the non-production activities or the time spent on such activities of any other Roll-Off Driver. Benavides specifically testified that "everybody doesn't do the same things every day," Serrano testified that his routes "changed every day," and several Plaintiffs testified as to additional ways that their own non-production time/activities vary day to day. Baca, whose employment ended in March 2013, testified that he does not remember details about his pay or whether he received pay sheets because it was so long ago and Baca cannot have personal knowledge of other driver experiences after his termination four years ago. As this varying testimony demonstrates, Plaintiffs have not met their burden of establishing that the experiences and testimony of the five testifying Plaintiffs are sufficiently similar and representative of the rest of the non-testifying individuals. *See, e.g.*, *Wilson v. Navika Capital Grp., LLC*, 2014 WL 223211, at *15 (S.D. Tex. Jan. 17, 2014) (refusing to ultimately certify a collective action because the plaintiffs had not proposed a plan for using representative testimony); *Vanzzini v. Action mea Distribs.*, 995 F. Supp. 2d 703, 722-23 (S.D. Tex. 2014) ("Taken together, these differences suggest that, as a group, these employees' claims are not susceptible to proof through representative evidence. In other words, the potential class members lack a factual nexus tying them together; these disparate factual and employment settings strongly suggest that all of the potential class members were not subjected to a common decision, policy, or plan."); *Roussell v. Brinker Int'l*, 2008 WL 2714079, at *22 (S.D. Tex., July 9, 2008) ("The use of representative testimony is justified only where it is reasonable to believe that the testifying witnesses' experiences are sufficiently similar to those of the rest of the non-testifying plaintiffs."). Indeed, Plaintiffs have not set forth any evidence to establish that the testifying Plaintiffs are "representative" other than saying so. Accordingly, Plaintiffs have not met their burden of

15

establishing that their non-production time claim should proceed on a collective or representative basis.

Further, to the extent the Court deemed the eleven individuals listed in Plaintiffs' Third Amended Complaint—Mauro Serrano III, Jose Baca, Andrew Benavides, Simon Aleman, Luis Flores, Erasmo Cancino, Albert Ysaguirre, Michael Ruiz, Christopher Sifuentes, Luis Cuevas, and Joe Doresey—or the remaining opt-in Plaintiffs to be named Plaintiffs, any named Plaintiff who failed to appear at trial and testify should be dismissed pursuant to Fed. R. Civ. P. 41(b) for failure to prosecute.  *See Taylor v. C.I.R.*, 271 F. App'x 414, 416 (5th Cir. 2008) (affirming tax court's dismissal for failure to prosecute when plaintiffs "failed to appear at the trial and have offered no reason for this absence"); *Fraser v. Patrick O'Connor & Assocs., L.P.*, 2016 U.S. Dist. LEXIS 103111, *9 (S.D. Tex. Aug. 4, 2016) (dismissing named plaintiff in FLSA action for failure to prosecute because "Plaintiffs have failed to participate in the case in any meaningful way since filing their respective Consent to Become Party Plaintiff almost two years ago"); *Rodriguez v. Mech. Tech. Servs.*, 2015 U.S. Dist. LEXIS 181800, *7 (W.D. Tex. May 8, 2015) (dismissing opt-in plaintiffs in FLSA action for failure to prosecute where individuals did not participate in discovery); *McDaniel v. Lee*, 1999 U.S. dist. LEXIS 1050, *2-3 (E.D. La. Jan. 27, 1999) (dismissing plaintiff's case for failure to appear for trial without a bona fide excuse for his absence).

## IV. Plaintiffs Have Failed To Meet Their Burden Of Proving That Defendants Willfully Violated The FLSA

The FLSA statute of limitations is two years, but can be extended to three years for willful violations.  29 U.S.C. § 255(a).  A violation is "willful" if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133 (1988).  An employer acts with reckless

disregard when it acts, or fails to act, with a conscious lack of concern for the consequences. *Singer v. City of Waco*, 324 F.3d 813 (5th Cir. 2003). Plaintiffs have the burden to prove that Defendants willfully violated the FLSA. *Cox v. Brookshire Grocery Co*., 919 F.2d 354, 356 (5th Cir. 1990). Plaintiffs have failed to meet their burden.

Indeed, Plaintiffs have failed to put forth *any* evidence to support a finding of willfulness. To the contrary, the testimony at trial established that there is no standard definition of non-production time/activities in the industry and no one at Republic understands or defines non-production time the way that Plaintiffs claim—General Manager Robert Bradley and Operations Manager Dennis Chapa understand the term non-production to apply to PTO, vacation, or personal days and Joe Burkel testified (by deposition) that non-production activities are things that are completely separate from the route and that in his opinion pre- and post-trip inspections, landfill waiting time, and driving time are all "productive" time that is part of the route/haul. Testimony was consistent at trial that all of the time spent on alleged non-production activities was on-the-clock and that Plaintiffs were paid (at a rate above the federal statutory minimum) for all of their on-the-clock hours. The testimony at trial established that Defendants calculate Plaintiffs' regular rate each week by adding up each Plaintiff's total compensation for the week (regardless of whether through haul/zone rates, other piece rates, day rates, extra pay, etc.) and dividing that total compensation by the Plaintiff's total hours worked in the week. Defendants paid Plaintiffs that regular rate for each hour they worked that week, including hours worked over 40 (*i.e.*, the "1.0" or straight "time" component for all hours worked each workweek). Plaintiffs were paid an additional half-time overtime premium for hours worked in excess of 40 in the week (*i.e.*, the "0.5" or "and one-half" component for the overtime hours each workweek), thereby providing the required "one and one-half times the regular rate" for all overtime hours.

17

Because Plaintiffs have failed to put forth any evidence to meet their burden to prove that Defendants committed a willful violation of the FLSA,[4] judgment on partial findings is appropriate.

## CONCLUSION

For the reasons set forth above and as set forth at trial, Defendants respectfully request that the Court grant its Motion for Judgment on Partial Findings and enter judgment against Plaintiffs' non-production time claim.

DATED:  April 28, 2017                                    Respectfully submitted,

                                                          SEYFARTH SHAW LLP

                                          By: /s/ Noah A. Finkel

                                              Noah A. Finkel (*admitted pro hac vice*)
                                              nfinkel@seyfarth.com
                                              Kara L. Goodwin (*admitted pro hac vice*)
                                              kgoodwin@seyfarth.com
                                              131 S. Dearborn Street, Suite 2400
                                              Chicago, IL  60603-5803
                                              Telephone:   (312) 460-5913
                                              Facsimile:    (312) 460-7913

---

[4]     Even if the Court concludes that Defendants violated the FLSA, there can be no finding of willfulness because an employer's erroneous interpretation of the FLSA is not willful where the legal issue involves an unsettled question of law. *See Reich v. Gateway Press, Inc.*, 13 F.3d 685, 702-03 (3d Cir. 1995) (defendant's erroneous interpretation of FLSA was not willful, particularly where legal issue involved unsettled question of law); *Lugo v. Farmer's Pride, Inc.*, 802 F. Supp. 2d 598, 618 (E.D. Pa. 2011) (holding as a matter of law that employer was not on notice that its policy violated the FLSA and did not willfully violate the FLSA based on "the absence of binding Third Circuit precedent on" the specific issue of the case); *Valladon v. City of Oakland*, 2009 U.S. Dist. LEXIS 97485, at *35 (N.D. Cal. Oct. 20, 2009) ("The Court agrees with defense counsel's assertion . . . that the unsettled nature of the law governing compensation for donning and doffing means that the failure to compensate for it cannot have been a willful violation.").

38869882v.1

**OF COUNSEL:**

Esteban Shardonofsky
Texas State Bar No. 24051323
sshardonofsky@seyfarth.com
700 Milam Street, Suite 1400
Houston, TX  77002-2812
Telephone: (713) 225-2300
Facsimile:  (713) 225-2340

ATTORNEYS FOR DEFENDANTS
REPUBLIC SERVICES, INC., BFI WASTE
SERVICES OF TEXAS, LP, REPUBLIC
WASTE SERVICES OF TEXAS, LTD., AND
ALLIED WASTE SERVICES, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2017, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court for the Southern District of Texas, using the electronic case filing system of the court.  The electronic case filing system of the court sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

Austin W. Anderson
Lauren Braddy
Clif Alexander
Anderson2X, PLLC
819 North Upper Broadway
Corpus Christi, TX  78401

/s/ Esteban Shardonofsky
Esteban Shardonofsky

38869882v.1